HARVARD LAW LIBRARY

*New-Haven,*
November,
1827.

The Oxford
Turnpike Co.
*v.*
Bunnel.

THE OXFORD TURNPIKE COMPANY *against* BUNNEL.

Where the act incorporating a turnpike company, authorized the company to es-
tablish such by-laws as should appear necessary or expedient for the govern-
ment of the corporation, or the regulation of their concerns, not contrary to
law ; and a by-law of the company provided, that no transfer of any share
should be valid, until received for record by the clerk, who should enter on
the transfer the time he received it, which should bear date accordingly ; it
was held, that a sale or pledge, accompanied by a letter of attorney to make
the transfer, was of no avail to convey a title, until the transfer was received
for record by the clerk.

In all transfers under such charter and by-law, the change of title takes place
when the instrument of transfer is received for record by the clerk ; and the
transfer bears date from that time.

Therefore, where *A.*, the holder of certain shares of stock in such company,
agreed with *B.* to transfer them to him, as security for acceptances and ad-
vancements made by *B.* for *A.* ; and for that purpose, *A.*, on the 20th of
*October*, at 9 o'clock *A. M.*, executed and delivered to *B.* a letter of attorney
to the clerk of the company, authorizing him to transfer such shares to *B.*,
which was sent by mail to the clerk, and was received by him, on the 8th
of *November* following, in pursuance of which he made a regular transfer of
the shares to *B.* on the books of the company ; *C.*, a creditor of *A.*, attached
the same shares, on the 20th of *October*, at 10 o'clock *A. M.*, in a suit against
*A.*, in which he recovered judgment, more than two years afterwards, and
had his execution levied on the shares, which were sold at the post, and *C.*
became the purchaser ; it was held, that *C.* obtained thereby a legal title,
and *B.* had no title, to the shares.

This was an action of *indebitatus assumpsit*, to recover of
the defendant 116 dollars, being the amount of the dividend,
which had been declared on fifty-eight shares of the stock of
*The Oxford Turnpike Company*, and which had been received
by the defendant.

The cause was tried, on the general issue, at *New-Haven*, at
an adjourned term in *April*, 1827, before *Daggett*, J.

From the 27th of *April*, 1822, to the 6th of *April*, 1824, the
defendant was the clerk, and treasurer of the company ; and
the sum of 116 dollars, which had accrued as profits on said
shares, and had been duly declared, had been paid by him,
while treasurer, to *J. W.* and *R. Leavitt*, of *New-York*. Wheth-
er that payment was lawful or not, was the only question in the
case.

On the 20th of *October*, 1821, at half past 10 o'clock A. M,
*Asahel Bacon* commenced an action against *Charles Bacon*, and
attached fifty-eight shares of the stock of said company, stand-
ing in *Charles Bacon's* name, as his property ; and at the term
of the superior court for *New-Haven* county, in *January*, 1824.,

he recovered judgment, and in *March* following, had the execution, issued on such judgment, levied on these shares, which, with the profits thereon, were sold at the post, and purchased by him, *Asahel Bacon.*

*New-Haven,*
*November,*
1827.

The Oxford
Turnpike Co.
*v.*
Bunnel.

On the 15th of *October,* 1821, *Charles Bacon* arrived at *New-York* from *New-Haven,* where he had previously transacted business, on his way to *Charleston,* with a view to open a dry-goods store there, and proposed to *J. W. & R. Leavitt* to purchase of them what goods he might find in their store suitable for that market; and for such other goods as he might find in the city, and wish to purchase, he requested them to permit him to draw on them, payable at different times; and for such acceptances as they might come under, on account of such purchases, he proposed to secure them, by a transfer of said stock, with directions to sell it at such time before the acceptances might fall due, as would probably bring the best price, and to apply the avails in payment of the acceptances. The *Leavitts* agreed to this arrangement, and sold to him goods to the amount of 4085 dollars, 44 cents, and accepted his drafts on them, in favour of other merchants in *New-York,* payable at four and six months, to the amount of 3367 dollars, 66 cents. To secure them, *Charles Bacon,* at 9 o'clock, A. M. on the 20th of *October,* 1821, executed and delivered to them, a letter of attorney to *David Tomlinson,* Esq. of *Oxford,* clerk of said company, authorizing him to transfer to them the stock in question; and on the 1st of *November,* 1821, the *Leavitts* sent this letter of attorney to Mr. *Tomlinson,* by mail, who, in pursuance thereof, made, on the books of said company, an absolute and regular transfer to them, on the 8th of *November,* 1821. *Charles Bacon* continued in business at *Charleston* until the *summer* following, and during that period, made frequent remittances to the *Leavitts* in money, and also received from them, from time to time, further supplies of goods. At the time of the trial, there was due to them a balance of 3824 dollars, 75 cents, for their acceptances, for goods sold and for cash advanced.

The shares in question were worth from 2800 to 3000 dollars. When *Asahel Bacon* attached them, he had no notice of the *Leavitts'* claim to them; but he had notice thereof before the levy of his execution.

The shares in question, on the 29th of *January,* 1819, were the property of *Asahel Bacon,* who, on that day, transferred them

*New-Haven,*
*November,*
*1827.*

*The Oxford*
*Turnpike Co.*
*v.*
*Bunnel.*

to *Charles Bacon*, under an agreement between them, that the latter might sell them, if he could obtain a specified price for them, and receive the avails in part payment of the sum of 6000 dollars, which *Asahel* had agreed to advance to *Charles*, for the purpose of setting him up in business in *New-Haven ;* but if that price could not be obtained, and the money should be advanced, *Charles* was to re-convey the shares. *Charles* could not obtain the price ; and *Asahel* advanced the money to him, and demanded of him a re-conveyance of the shares, when he was about to leave *New-Haven* for *Charleston*, previous to any of the transactions with the *Leavitts.*

It was claimed by the defendant, that *Asahel* permitted the title to the shares to remain in *Charles.* for the purpose of enabling him to obtain a false credit thereby, and to be sold, or pledged for goods to be bought ; which was denied by the plaintiffs.

The plaintiffs read in evidence the following by-law of the company, passed on the 29th of *December*, 1795 : " *Voted,* that the following form be adopted in future, for the transfer of any share or shares, as the case may be, in *The Oxford Turnpike Company.—Voted,* that no transfer of any share in *The Oxford Turnpike Company* shall be good and valid, until received for record by the clerk, who shall enter on said transfer the time he receives the same, which shall bear date accordingly." The plaintiffs also read in evidence their charter of incorporation, by which they were authorized to establish such by-laws as should appear necessary or expedient for the government of the corporation or the regulation of their concerns, not contrary to law.

The judge charged the jury as follows : " In this case, two questions are presented for decision ; one of law, the other of fact. It is insisted by the plaintiffs, that the levy of the execution of *Asahel Bacon*, connected with the attachment, and all the proceedings thereon, vested a good title to the stock in question in him ; for that although the power of attorney was executed in *New-York*, prior in time to the levy of the attachment, yet there having been no transfer on the books of the company previous to the 8th of *November*, about twenty days after the service of the attachment, the title derived under the execution is valid ; and of this opinion is the court. Therefore, the verdict ought to be for the plaintiffs, unless the question of fact should be found against them. That question is

whether *Asahel Bacon* delivered these shares to *Charles Bacon*, and permitted them to remain in his hands, to enable him to obtain a credit, by the pledge or sale thereof, as is urged by the defendant. If that was in truth the transaction, then *Asahel Bacon* could gain no right, by his attachment, against such sale or pledge; and, of course, the verdict ought to be for the defendant."

The jury returned a verdict for the plaintiffs; and the defendant moved for a new trial, for a misdirection.

*Sherman* and *Hitchcock*, in support of the motion, after remarking that the case shews a valid purchase of the stock, by the *Leavitts*, and reasonable diligence in procuring a formal transfer, contended, 1. That the power of attorney, when recorded, and the transfer by virtue thereof, when finished, relate back to the time of the purchase, or date of the power, and complete a title from that time. 4 *Cruise's Dig.* 182. 5 *Cruise's Dig.* 551. *Jackson* v. *Bull*, 1 *Johns. Ca.* 84. *Johnson & ux.* v. *Stagg*, 2 *Johns. Rep.* 510. *Holdfast* d. *Woollams*, 1 *Term Rep.* 600.

2. That *Asahel Bacon*, knowing of the title of the *Leavitts*, before he levied his execution, and purchased under his own levy, is bound by that notice; and it is illegal in him to claim a right to defeat their title, and perfect his, by a levy and purchase, which are effective only by relation. *Hinman* v. *Hinman*, 4 *Conn. Rep.* 575.

3. That the case is distinguishable from *The Marlborough Manufacturing Company* v. *Smith*, 2 *Conn. Rep.* 579. and *Northrop* v. *The Newtown and Bridgeport Turnpike Company*, 3 *Conn. Rep.* 544., because in each of those cases, the charter prescribed that transfers should be made on the books of the company only. In this case, the charter contains no such provision; and the by-law does not require the transfer to be made on the books of the company, but only to be *recorded* there. It merely suspends the operation of the transfer until recorded; and it then becomes valid, by its own operation. The by-law does not refer to the time of a purchase, nor the manner in which an interest in a share shall be obtained, but only to the evidence, which the purchaser, after he has obtained an interest, shall furnish to the company, that they may know with whom to deal as stockholders.

*In margin:*

New-Haven,
November,
1827.

The Oxford
Turnpike Cn.
v.
Bunnel.

*New-Haven,*
November,
1827.

The Oxford
Turnpike Co.
*v.*
Bunnel.

*R. S. Baldwin,* contended, 1. That *Asahel Bacon* having an equitable title to these shares before *Charles* went to *New York ;* as he had advanced their full value to *Charles,* upon a specific agreement that they should be conveyed to him, and had demanded a re-conveyance before *Charles* left *New-Haven ;* whoever treated with *Charles* for the purchase of the shares, if he did not obtain a *legal title,* took them subject to the prior equity of *Asahel.*

2. That independently of the prior equity of *Asahel Bacon* to these shares, the *Leavitts* acquired no title by their power, and subsequent transfer, which would have prevailed against any intermediate attaching creditor of *Charles.*

In the first place, the object of the transfer to them, was, to secure their acceptances. But the power itself conveyed authority to make an *absolute* transfer, and was so executed. Had it been carried into complete effect at that time, it would have been void against a subsequent attaching creditor. It was in the nature of a parol mortgage.

Secondly, had a transfer, instead of a power, been executed in *New-York,* on the 20th of *October,* and not sent for record until the first of *November,* a recording of it, after that lapse of time, would not have been operative to defeat an intermediate lien. This, in point of law, is not a *reasonable time.*

Thirdly, there was, in fact, no transfer until the 8th of *November,* twenty days after the attachment was levied. The cases of *The Marlborough Manufacturing Company* v. *Smith,* 2 *Conn. Rep.* 579. and *Northrop* v. *The Newtown and Bridgeport Turnpike Company,* 3 *Conn. Rep,* 544., especially the latter, have settled the point, that the recording is that which constitutes the transfer—that it is the act, which originates and perfects the change of title. Prior to that time, these shares (except for the attachment) were as much under the controul of *Charles* as they ever were. A sale by him would have been valid ; and the purchaser would have held the title against the *Leavitts.*

Fourthly, an attaching creditor, by our law, stands on the same footing as a purchaser, at the time of the attachment, would. He holds subject to his judgment the shares and all accruing profits. The levy and sale on execution have relation back to the time of *service.* *Lyon* v. *Sanford* & al. 5 *Conn. Rep.* 544. 547. *Asahel Bacon* acquired, therefore, by his attachment, as strong a lien, as he would have acquired, if *Charles*

**ad**, on the day of service, given him a transfer or mortgage, without notice of any other claim.

*New-Haven*, November, 1827.

But, it is claimed that the power to *Tomlinson*, when executed, gives effect to the transfer from the date of the power. In the first place, this point was decided otherwise, in *Northrop* v. *The Newtown and Bridgeport Turnpike Company.* Secondly, the doctrine of relation is a fiction of law, which is never permitted to affect the intermediate rights of third persons. *Jackson* d. *Henderson* v. *Davenport*, 20 *Johns. Rep.* 537.

The Oxford Turnpike Co. *v.* Bunnel.

Again, it is said, that *Asahel Bacon* had *notice* before the levy of his execution. This is wholly immaterial, in any case. The lien is acquired, by the attachment: if it is valid at that time, it can never be defeated, by subsequent notice. The property was in the custody of the law, for the purpose of being sold on the execution; and whether the attaching creditor was the purchaser, or any other person, could make no difference.

*N. Smith*, on the same side, declined argument.

DAGGETT, J. The question of fact raised on the trial of the issue to the jury, at the circuit, was, by the court, submitted to the jury, and by the jury found against the defendant. Of that part of the charge the defendant cannot and does not complain; but he now urges in support of his motion, that the charge of the court as to the question of law, was incorrect. The court instructed the jury, that by the facts admitted, *Asahel Bacon's* right to the money in question was superior to that of the *Leavitts*. Whether this instruction was right, depends solely on the question whether *Bacon's* attachment gave him a preference to the power of attorney given by *Charles Bacon* to the *Leavitts*.

The parties, by their counsel, respectively, claim a superior *equity*. I can discover no ground in the facts detailed in the motion, for the discussion of such a question. It is a mere question of *law*, which of the two contending parties has a *legal* right to the shares of the turnpike stock, attached by *A. Bacon*, on the 20th of *October*, and on the same day, and at an *earlier* hour of the day, attempted to be transferred to the *Leavitts*, by the power of attorney of *Charles Bacon*.

It was in the power of the legislature, by the act incorporating *The Oxford Turnpike Company*, to prescribe the mode of transferring its stock. This the legislature did not do, but au-

*New-Haven,*
*November,*
*1827.*

The Oxford
Turnpike Co.
*v.*
Bunnel.

thorized the company " to establish such by-laws as should appear necessary or expedient for the government of the corporation, or the regulation of their concerns, not contrary to law."

The company, by virtue of the authority conferred on them, by the charter, passed a by-law, "that no transfer of any share in *The Oxford Turnpike Company* shall be good and valid, until received for record, by the clerk, who shall enter on said transfer the time he receives the same, *which shall bear date accordingly.*"

I am satisfied, that the decisions in the case of *The Marlborough Manufacturing Company* v *Smith,* 2 *Conn. Rep.* 579. and *Northrop* v. *The Newtown and Bridgeport Turnpike Company,* 3 *Conn. Rep.* 544. must govern the case now under consideration.

In these cases, and especially in the last cited, the judgment proceeded on the precise point now raised.

The marginal note, which contains a condensed view of the case, is in these words : "Where the act incorporating a turnpike company, provided, that the shares of stock should be transferable only on the books of the company, in such manner as the company should, by their by-laws direct ; and a by-law of the company provided, that the board of directors should prescribe the form of the transfer, to be registered, by the clerk, in the books of the company, and that no transfer should be valid, unless so made and registered ; it was held, that a deed of assignment, in the form prescribed, *was of no avail to convey a title until actually registered in the books.*" "The registry operates, not merely to perfect a conveyance previously begun, or to give notice of a conveyance previously perfected, but *is itself the originating act in the change of title.*" "An entry of the clerk on the deed of assignment, 'received for record,' is not equivalent to a registry." Neither of these cases furnish as decisive evidence against the validity of the transfer, as is furnished by the by-law in question. Here, it is expressly declared, that the transfer shall *bear date* when received by the clerk. Now, the clerk did not receive it till the 8th of *November;* and on the 20th of *October* previous, *Asahel Bacon* obtained his lien by the attachment; and the shares were sold on the execution afterwards obtained, according to law.

To sustain the objections urged here against *Bacon's* title,

the Court must not only reverse the decisions mentioned, but must declare a transfer of stock good, in opposition to both the spirit and letter of the by-law.

I am of opinion, therefore, that a new trial must be refused.

The other judges were of the same opinion, except BRAIN-ARD, J., who was absent.

New-Haven,
November,
1827.

The Oxford
Turnpike Co.
*v.*
Bunnel.

New trial not to be granted.