## Case No. 14,912.

### UNITED STATES v. CUTTS.

[1 Sumn. 133.] 1

Circuit Court, D. New Hampshire. May Term, 1832.

BANK STOCK—ASSIGNMENT—TRANSFER—EQUITABLE TITLE—UNITED STATES—PRIORITY OF PAYMENT—ADMINISTRATOR—ASSETS.

1. A, owning certain five per cent. stock of the United States, borrowed $1960 of B on a note payable in four months, and made an assignment of the stock, with a power of attorney to transfer it on the books of the bank, and delivered the certificate of the stock to B, who was to sell the stock, if the debt was not paid when due. A died before the note became due, insolvent and indebted to United States, who claimed a priority of payment. The stock was never transferred on the public books during A's lifetime. After his death his administrator sold the stock, and applied the proceeds to the payment of B's debt. It was held, that B took an equitable interest by the assignment in the stock, notwithstanding the act of 1790, [1 Story's Laws, 109; 1 Stat. 138. c. 34], had declared, that transfers should be made only on the books of the government by the party in person, or by his attorney, and that the payment by the administrator was not a misapplication of the assets.

[Cited in Continental Nat. Bank v. Eliot Nat. Bank. 7 Fed. 372; Scott v. Pequonnock Nat. Bank, 15 Fed. 499, 501.]

[Cited in Conant v. Reed, 1 Ohio St. 306; Reed v. Copeland, 50 Conn. 490; Walker v. Detroit Ry. Co., 47 Mich. 347; Weston v. Bear River & A. Water & Mining Co., 5 Cal. 186.]

2. The act of 1790, c. 61 [1 Story's Laws, 109; 1 Stat. 138, c. 34], did not intend to interfere with, or prohibit. equitable titles or claims on stock; but only to fix the legal title between the government and the holder.

3. Stock held by a trustee (and the holder after an assignment is a mere trustee) is not assets in the hands of his administrator or assignees.

This was an action of debt on an official bond, given by N. Lyde (the intestate) for the faithful performance of his duties as purser in the navy. The parties agreed to a special statement of facts, as follows: "It is agreed that the defendant's intestate was a purser in the navy of the United States, and that the bond mentioned in the plaintiff's writ was given by the said Lyde for the faithful performance of his official duties as such purser. The said Lyde died on the 7th of July, 1828, and in June, 1829, a balance was stated by the accounting officers of the treasury to be due from the said Lyde's estate to the United States, of $5522.08. The defendant immediately afterwards paid to the United States the sum of $3857.75, being the amount of assets in his hands, unless the court shall be of opinion on the facts following, that he had a further amount. On the 1st day of July, 1828, the said Lyde borrowed of Thomas Sheafe the sum of $1960. and gave his note for that sum to said Sheafe, payable in four months, and also delivered to said Sheafe a certificate of five per cent. stock of the United States, standing on the books of the Bank of the United States, at Boston, for $1960, and executed and delivered to him an instrument, of which the following is a copy: 'Know all men, by these presents, that whereas I, Nathaniel Lyde, of the United States' navy, have obtained a loan of Thomas Sheafe, of Portsmouth, N. H., Esq., on my promissory note, bearing date this first day of July, 1828, for $1960, payable in four months and grace from the date hereof, and I have agreed to pledge $1960 of United States five per cent. stock, redeemable after the year 1832, belonging to myself. the certificate whereof has been delivered to said Sheafe, previous to the execution hereof, for drawing the payment of said note. Now know ye, that, in consideration of the premises, and for value received, I do hereby assign all my interest in said stock to said Thomas Sheafe. in trust and for the purposes aforesaid; and I do authorize and empower the said Thomas Sheafe, in person or by substitute in his name, to sell, assign, and transfer, unto any person or persons, as much of said stock as may be necessary to pay whatever may be due on said note, together with the necessary expenses attending the same. In witness whereof I have hereunto set my hand and seal, the first day of July, A. D. 1828. Nathaniel Lyde. (Seal.) Sealed, &c., in the presence of Richard R. Waldron. W. B. Parker.' And the said Sheafe, at that time, made to said Lyde a receipt in the following words: 'Portsmouth, N. H., July 1st, 1828. I acknowledge to have received of Nathaniel Lyde, Esq., a certificate of United States five per cent. stock for nineteen hundred and sixty dollars, as collateral security for a note of said Lyde to me for that sum, which certifi-

1 [Reported by Charles Sumner, Esq.]

# U. S. v. CUTTS (Case No. 14,912

cate is to be returned to said Lyde, also the assignment of said stock, whenever said note is paid. Thomas Sheafe.' The said Lyde died on the 7th of July, 1828. After the said note became payable, the said Sheafe applied at the office of discount and deposit of the Bank of the United States at Boston, to make a transfer of the same, which was refused at said office on account of the death of the said Lyde; and on the 15th of January, 1829, the said [Edward] Cutts, as administrator as aforesaid, on said Sheafe's giving a bond to indemnify him, transferred the said stock on the books of said office, to said Sheafe, in payment of said note and interest, and nine dollars and eighty cents, which sum constituted part of the money paid by the said Cutts to the United States. The said Sheafe allowed the current price at Boston, for stock of that denomination. The circumstances and amount of said Lyde's estate were not known at the time of the transfer. His estate has since been represented insolvent. If the court are of opinion, that the said stock, under the foregoing circumstances, constituted assets in the hands of the said Cutts, as administrator, the defendant is to be defaulted, and judgment rendered for the sum of $1664.33, debt, and costs, in common form, and execution to issue. If otherwise, judgment is to be rendered in favor of the plaintiffs for the same sum, to be levied on the goods and chattels, which were of the said Lyde, and which shall hereafter come to the hands of the said Cutts, as administrator as aforesaid, to be administered. It is understood, that the defendant is not to be prejudiced by the foregoing statement from claiming further allowances, which he claims to be equitably due from the United States to the estate of said Lyde."

The cause was argued at the last October term at Exeter, N. H., in the absence of the district judge, by Messrs. Mason and Durell for the plaintiffs, and by E. Cutts and Mr. Bartlett for the defendant.

For the plaintiffs it was contended, that there was no legal transfer to Sheafe by the instrument stated in the case, in the lifetime of Lyde. The transfer by the act of 4th of August, 1790; Story's Laws, p. 112, c. 61 [1 Stat. 140],—could be made only on the books of the treasury, by the party or his attorney; and this provision extended to all subsequent acts respecting the transfer of the public debt. The certificates of the public debt on their face purport "to be transferable only at the bank," by the party or his attorney. If this be so, then, by the death of Lyde, the transfer was extinguished; and, Lyde's estate being insolvent, the United States were entitled to the statute priority given to the government by law, and the administrator had no right, as against creditors, to make the transfer for the benefit of Sheafe. The instrument of agreement did not make any transfer of the stock, or show an intention to make

any immediate transfer. The words are, that Lyde has agreed to transfer, not that he has transferred. No transfer was to be made, until after the note became due, and was unpaid. And so the receipt of Sheafe purports. If these positions are correct, then Sheafe had no lien on the stock. The delivery of the certificate would not make any difference, or give any lien on the stock; and the power given in the instrument was a mere verbal power, not coupled with any interest. There was no mistake, no fraud, and no error. The parties did exactly what they intended. The case, then, falls directly within the authority of Hunt v. Rousmanière's Administrator [Cases Nos. 6,897 and 6,898]; s. c., 8 Wheat. [21 U. S.] 174, 1 Pet. [26 U. S.] 1. Against other creditors, in a case of insolvency, a court of equity would not give any relief. So it was held in Hunt v. Rousmanière. It would not overrule the express provisions of the statute, as to the mode of transfer.

For the defendant it was argued, that the instrument was not a mere power of attorney. In the beginning, it is true, it is stated, that Lyde had agreed to pledge, &c.; but afterwards it is expressly stated, that he does thereby assign the stock. It is a power, then, coupled with an interest in the stock. It is true, that it was not a transfer at law, but it was in equity, and transferred Lyde's interest in the stock; and so the power was irrevocable, and survived the death of Lyde. A trust coupled with a power or interest survives. 4 Dane, Abr. c. 135, art. 6, §§ 4, 8. The intention was to give Sheafe a complete lien on the stock. The certificate was delivered to Sheafe, and no transfer could be made on the books of the bank without delivering it up. Hunt v. Rousmanière [supra] was a case of a mere naked power. The intestate remained in possession of the vessel. The loan officer, after Lyde's death, might properly have allowed Sheafe to transfer the stock. The administrator has done no more than his duty. The statute—August 4, 1790 [1 Story's Laws, 109, c. 61, 1 Stat. 138]—as to transfers is a mere regulation between the government and the stockholders, with regard to the legal interest, and who shall be deemed owners, as between them. It did not intend to touch any assignments or transfers between the holders and third persons. Sheafe was an assignee of a chose in action, and as such, he had a power conferred with an interest. Wheeler v. Wheeler, 9 Cow. 34. The administrator might have been compelled in equity to make this transfer; and if so, there is no devastavit, or misappropriation of the funds.

STORY, Circuit Justice. This cause was argued fully at the last term; and entertaining, as I did, considerable doubts upon it, at and after the argument, it was continued for advisement until this term. In the mean time, I have bestowed no inconsiderable reflection upon the subject, and have availed myself of

all the information within my reach, as I deem the decision of great practical importance.

The question, upon the statement of facts, comes to this, whether there has been any misapplication of the assets of Lyde, the intestate, by his administrator, in the sale and appropriation of the five per cent. stock to the payment of the debt due to Sheafe, Lyde's estate being insolvent, and the United States, in such a case, having, under the statute of March 3d, 1797, c. 74, § 5 [1 Story's Laws, 464; 1 Stat. 512, c. 20], a right of priority of payment of all debts due to the government out of his assets. And that depends upon this farther question, whether the instrument under which Sheafe claims a right to the stock in controversy, and the deposit of the certificate with him, were a sufficient equitable assignment of the stock, or gave a sufficient lien thereon to defeat the priority of the United States.

In order to arrive at a just conclusion upon this point, it will be necessary, in the first place, to ascertain, what is the true interpretation of the terms of the instrument; and in the next place, what is the legal operation of those terms, when their meaning is thus ascertained. The instrument begins by reciting, that Lyde had obtained a loan of Sheafe on a note dated the 1st of July, 1828, for $1960, and payable in four months and grace; and that Lyde had "agreed to pledge" $1960 of United States five per cent stock, redeemable after the year 1832, belonging to himself, the certificate whereof had been then delivered to Sheafe, for securing the payment of the note; and it then proceeds to declare, that in consideration of the premises, he, Lyde, did thereby "assign all (his) interest in said stock" to Sheafe, in trust and for the purposes aforesaid; and he then constituted Sheafe his attorney in person, or by his substitute in his (Sheafe's) name, to sell, assign, and transfer unto any persons, so much of the stock as may be necessary to pay whatever may be due on the note, with the necessary expenses. The intention to pledge the stock, as security for the note, is unquestionable; and in execution of this intention, there is an actual delivery of the certificate, and an assignment, in appropriate words, of all his (Lyde's) interest in the stock, and an authority to sell and transfer the same. It is not, then, the case of a mere unexecuted agreement to pledge the stock; nor a mere naked delivery of the certificate, as the sole pledge; but, so far as the parties could execute the agreement of pledge, without an actual transfer of the stock on the books of the bank, they have perfected the pledge by an assignment of the interest, and a delivery of the certificate. The power of attorney is not a mere naked power, uncoupled with any interest, according to the intention of the parties; but, if such is its effect, it results from principles of law, wholly beside that intention and in opposition to it.

What, then, is the legal operation of the terms of the instrument, according to this, which is the natural, and, as I think, the only just interpretation of them? Is it utterly void, except as a mere power to sell and transfer? If so, then, upon the doctrine of the case of Hunt v. Rousmanière [Cases Nos. 6,897 and 6,898]; s. c., 8 Wheat. [21 U. S.] 174, 1 Pet. [26 U. S.] 1, though irrevocable by Lyde during his lifetime, it became extinguished by his death. Now, I am clearly of opinion, that it cannot be so considered. If it does not, in point of law or equity, assign any interest in the stock, still it does contain an agreement to pledge it, which agreement, being legal, is a subsisting contract, capable of being enforced in an action at law, or by a bill in equity for a specific performance, against Lyde's administrator, supposing the rights of other creditors not to interfere. No one can doubt, that, if Lyde's estate were solvent, the administrator might be compelled in equity to transfer the stock to Sheafe, or to a purchaser under him, on the books of the bank, or at least to have it sold, in order to discharge the debt. And, if the administrator should refuse so to do, he might, at the election of Sheafe, be sued also at law for damages for the breach of the contract. But the difficulty is not in applying the remedy; but in the nature and effect of the relief, arising from the interfering rights and equities of other creditors, in a case of insolvency. If a recovery should be had at law, Sheafe, in a case of insolvency, could only come in, pari passu, with other creditors of the same degree, and not with others possessing a priority. And in equity, if he could obtain a specific performance at all, it must be because he has a superior equity upon such a contract of pledge over other creditors. That could not be pretended, unless his contract created a lien on the very stock (see Hunt v. Rousmanière [Case No. 6,897]; s. c., 1 Pet. [26 U. S.] 1); or an assignment, which should in equity be deemed an appropriation of the fund (Lepard v. Vernon, 2 Ves. & B. 51). In regard to the lien, that seems to have been relied on at the argument, as arising from the delivery of the certificate, according to the intention of the parties, and from some supposed analogy to the lien recognised in equity, in cases of a deposit of title deeds, which is held to amount to an equitable mortgage. See 3 Cov. Pow. Mortg. c. 23, pp. 1049–1061; Mandeville v. Welch, 5 Wheat. [18 U. S.] 277, 284. And it has been said, that no transfer of the stock would be allowed, but upon a surrender of the old certificate. That is probably true in point of practice. I am not aware, however, that it is strictly required by law. There may doubtless be a pledge of a certificate of stock, which shall operate merely as a pledge of the instrument, and not of the stock; but ordinarily the deposit of the certificate as an exposition of the intention of the parties, covers also a pledge of the stock. Formerly, indeed, upon a mere deposit of title deeds, the

party took an interest in the deeds only, and not in the estate. Ex parte Whitbread, 19 Ves. 209–211. The first case the other way, seems to have been Russel v. Russel, 1 Brown, Ch. 269. In the present case, however, there is no doubt, that the parties intended a lien, or equitable mortgage, not merely upon the certificate, but upon the stock. If the analogy of a deposit of title deeds should, therefore, hold good, it would apply with great cogency to the present case; for it has been decided, that the equitable lien by a deposit of title deeds, is good against the priority of the crown for a debt, found due by an inquisition, after the date of the deposit. Casberd v. Ward, 6 Price, 411. See, also, Ex parte Byas, 1 Atk. 124; Mandeville v. Welch, 5 Wheat. [18 U. S.] 277, 284.

But waiving any inquiry of this sort, let us see, how the case stands upon the ground of assignment. The statute of August 4th, 1790 [1 Story's Laws, 109, c. 61; 1 Stat. 138, c. 34], authorizing the creation and transfer of stock of the public debt, provides (section 7) "that the stock, which shall be created pursuant to this act, shall be transferable only on the books of the treasury or of the said commissioners respectively, upon which the credit for the same shall exist at the time of transfer, by the proprietor or proprietors of such stock, his, her, or their attorney." This clause has been made applicable to all other loans and stock subsequently created. And by the act of March 3d. 1817, c. 211 [3 Story's Laws, 1625; 3 Stat. 360, c. 38], the duties of commissioners of loans were transferred to the Bank of the United States; and have ever since been performed by that national institution. The argument is, that this statute contains a virtual prohibition of any transfer of stock, except on the books of the treasury or commissioners, according to the act of 1790; and that, consequently, the asserted assignment to Sheafe without such a transfer was utterly void, and inoperative, to convey any title whatsoever in the stock to him; and that a court of equity cannot create a transfer against the prohibitions of the act. If such be the true construction of the statute, there is an end of the defence; and judgment must pass in favor of the United States. That, however, is the very hinge of the controversy. That the statute is susceptible of that construction may be admitted; that it is the true or sole construction remains to be considered. Before entering upon this point, it may be proper to premise, that the United States have no lien, for any debts due to them, upon the public stock held by their debtors. To give or support any such lien, would defeat the obvious policy of the acts making the stock transferable. The claim, therefore, of the United States is merely a right of priority of payment, in cases of insolvency, out of the assets of the deceased debtor, in the hands of his administrators or executors, and not out of the stock specifically. The administrator has the sole right to sell

and transfer the stock; and his present act, so far as the sale and transfer are concerned, was entirely justifiable, and within the scope of his authority. The only point is, whether he has rightly applied the proceeds in the order of payment of the debts. Now it seems to me, that the true interpretation of the statute is, that, so far as the United States and the proprietors are concerned, no transfer is to be considered as complete and perfect, so as to pass the legal ownership of the stock, and make the purchaser the legal owner. until the transfer has been entered upon the public books. No person can transfer the same as such owner, or entitle himself to receive the dividends. unless he stands as a recorded proprietor upon these books. And there is a manifest propriety and policy, in this view, in making the provision, as it would avoid, on the part of the government, all inquiries into, and examination of, any equitable or other titles, or liens set up. as acquired under a proprietor, by any third persons dealing with him. This object may well be effected, without, in the slightest degree, interfering with the validity of any equitable titles or liens acquired under any agreement between the proprietor and third persons, so far as it regards them respectively. And it would sound harsh, to hold all such agreements between the proprietor and his creditor, or between him and a purchaser, utterly void, inter sese. unless there were a very plain and direct expression in the statute to that effect, which, in this case, there certainly is not. I understand the statute to provide only for legal transfers, and to look to them, and them only; leaving the parties at liberty to create whatever equitable titles and liens they may choose, and to enforce them by the general remedies between them and their representatives, which the jurisprudence of the country recognises for such purposes. And it appears to me, that the analogies of the law, and the general current of the authorities, justify this conclusion.

First, the analogies of the law. Nothing is more common, than for the legal estate or title to be in one person, and the beneficial interest in another. A trustee of stock is the legal proprietor; but the beneficial interest belongs to his cestui que trust. Suppose, in this case, Lyde had held the stock avowedly as the trustee for Sheafe, could there be a doubt, that, upon the death of Lyde, the stock would not have been assets; but would have been transferable to the cestui que trust? Now, in what substantial respect does the case, here put, differ from that at bar? After the agreement and assignment, was not Lyde to all intents and purposes a trustee, holding the legal title for the benefit of Sheafe? The argument would admit this conclusion, if the assignment were not utterly void, as an equitable assignment. But upon what ground can it be held utterly void? The statute has not declared, that a proprietor shall not contract to hold the stock, as trustee for another. Neither has it declared

him incapable of making an equitable assignment. All that it has declared is, that there shall not be any transfer of the stock except upon the books of the bank. The certificate upon its face contains the same declaration. Its language is, "which debt is recorded in, and transferable only at, this bank, by appearance in person, or by attorney." But, subject to this regulation, the proprietor may burthen or charge it with any trusts he pleases. The statute has not prohibited trusts; and it is almost incredible, that it should intend so to do. If it does not prohibit trusts, upon what ground can it be inferred, that it means to prohibit equitable assignments, which are only a mode of creating such trusts?

There is a clear line of distinction, running through all this class of cases, between a legal and an equitable transfer and right to stock. In this respect, stock, whether of a negotiable nature or not, bears a close analogy to choses in action; closer, perhaps, than to goods and chattels. See Wildman v. Wildman, 9 Ves. 174, 177. Now, though an assignment is not permitted by the common law, of any choses in action, except negotiable instruments, and therefore a transfer of them is, at law, utterly inoperative; yet it is common learning, that such an assignment is upheld in equity, and amounts to an appropriation of the property to the assignee. Thus, a debt due by bond, or in any other manner, than upon a negotiable instrument, may be assigned; and, from the moment of the assignment, the interest of the obligee, or other assignor, is, in the view of a court of equity, completely transferred to the assignee. And if, afterwards, the assignor dies, the rights of the assignee will be respected in the course of administration; and if the money is recovered by the administrator, as the only proper party to sue, it will not be deemed assets, but be treated as the money of the assignee. See Dawes v. Boylston, 9 Mass. 337; Cutts v. Perkins, 12 Mass. 206, 210; Wheeler v. Wheeler, 9 Cow. 34; Ex parte Byas, 1 Atk. 124. So a draft, drawn by a creditor upon his debtor, for an amount due to him, if made for a valuable consideration, amounts to an equitable appropriation and assignment of the fund, and will be enforced accordingly against the debtor. See Row v. Dawson, 1 Ves. Sr. 331; Mandeville v. Welch, 5 Wheat. [18 U. S.] 277, 285, 286; Clarke v. Adair, cited by Buller, J., in Master v. Miller, 4 Term R. 343; Cutts v. Perkins, 12 Mass. 206, 211; Ex parte Alderson, 1 Madd. 53. In the case of Lepard v. Vernon, 2 Ves. & B. 51, the whole scope of the reasoning of Sir William Grant shows, that if the debt had been assigned, the power, given to collect it, would have been deemed a power coupled with an interest, and the assignment a sufficient appropriation of the debt, so as to prevent it from becoming a part of the assets of the deceased in the hands of his administrator. There is nothing, then, in the analogies

of the law, which prevents a court of equity from holding the assignment in the present case from operating as an equitable appropriation of the stock, notwithstanding the statute does not contemplate any but a legal transfer of the stock, and directs such transfer to be made, and to be made only in a particular prescribed manner. These analogies show, that a transfer, void at law, may yet be upheld as an equitable appropriation, unless there be some prohibition by positive law.

Then, as to the authorities. They are not, perhaps, all reconcilable with each other; but there is a sufficiently strong body, in support of the views already suggested, to justify the court in its present decision. In the case of U. S. v. Vaughan, 3 Bin. 394, certain shares in the Bank of the United States had been transferred by the holders in London to a purchaser there, the certificate of the stock delivered to the purchaser, and a blank power of attorney to transfer them on the books of the corporation in America. The stock was attached by a process of foreign attachment before any actual transfer had been entered upon the books of the corporation. By the charter of the bank,—Act 1791, c. 84 [1 Story's Laws, 169; 1 Stat. 191, c. 10],— it was provided, that, "the stock of the said corporation shall be assignable and transferrible according to such rules as shall be instituted in that behalf by the laws and ordinances of the same;" and by a by-law of the corporation the stock was made transferrible only at the bank on its books by the proprietor personally, or his attorney. The argument was, that under these circumstances the transfer was void, and the attachment good. But the court held, that the sale and other proceedings operated as an equitable assignment to the purchaser; and that the attachment was void. There is an elaborate opinion of Mr. Justice Yeates, from which I will quote a single passage directly in point. "In what relation, then," says he, "previous to a formal transfer, did the original contracting parties stand towards each other? As between them, it is conceded, there subsisted a certain degree of equity; and why not a trust? B. S. and B. (the holders) ceased to have a beneficial interest in the shares of the bank stock, which they had sold at a full price. It is true on the face of the books they were the nominal stockholders; and a payment of the semi-annual dividends to them would have justified the directors of the bank. But had the power to transfer been revoked by the death of the attorney before its execution, or had it been consumed by fire, a court of equity would certainly have decreed a specific execution of the contract, &c. I, therefore, view B. S. and B. for the purposes of the present argument, as mere trustees for the claimants, against whom a chancellor would enforce a specific execution of their contract, &c.; and thinking, as I do, that the United States can have no claim on bank

stock, which their debtors had sold bona fide, &c.. I am of opinion." &c. Mr. Justice Brackenridge concurred. holding, that the by-law did not exclude the passing of an equitable interest. The case of Quiner v. Marblehead Ins. Co.. 10 Mass. 476 (see. also. Sargent v. Franklin Ins. Co.. 8 Pick. 90). is quite as strong. In that case the charter contained a clause, that no transfer of any share in said company shall be permitted. or be valid. until the whole capital stock shall be paid in. One half only had been paid in; and one of the stockholders assigned his shares to a purchaser. These shares were subsequently attached by a creditor of the stockholder: and the main question at the trial was, whether the creditor. or the purchaser. was entitled to the stock. The court held. that the prohibitory clause was not intended. as a general prohibition of transfers, but merely to prevent speculation in the scrip, and to continue the responsibility of the original subscribers. in case of loss, beyond the funds actually vested. The court said, that by this provision the transfer could not be complete. and essential to all purposes. until the full amount was paid in: but that the creditor. may be substituted for the debtor, and may acquire the right. upon payment of the residue of the subscription. to have the transfer entered upon the books; and that in the case then before the court the purchaser had the equitable interest in the shares, and the company would be justified in issuing certificates to him. In the case of Union Bank of Georgetown v. Laird. 2 Wheat. [15 U. S.] 390. the charter contained a clause, that "the shares of the capital stock. at any time owned by any individual stockholder, shall be transferable only on the books of the bank. according to such rules as may, conformably to law. be established in that behalf by the president and directors:" but all debts due to the bank must be first satisfied. The question was. whether a creditor. to whom the shares were assigned. as security. was. under the circumstances, entitled to a transfer of the stock without satisfying the debts due to the bank. That is not the point here; but the material consideration is. that the court in that case treated it as a valid equitable assignment. "No person." said the court, "can acquire a legal title to any shares. except under a regular transfer according to the rules of the bank; and if any person takes an equitable assignment. it must be subject to the rights of the bank under the act of incorporation." The same point was directly decided in President, etc.. of Bank of Utica v. Smalley. 2 Cow. 770. There. the charter declared, that, "no transfer of stock shall be valid or effectual until such transfer shall be registered in a book or books kept for that purpose by the directors," and unless the person making the same shall previously discharge all debts due by him or her to the corporation. The holder made an assignment of shares in Paris, which was not registered: the question was, whether it passed. as between vendor and vendee. the interest in the stock. The court held. that the transfer was valid between the parties without registration. though the purchaser must take. subject to the rights of the bank. The doctrine in Sargent v. Franklin Ins. Co.. 8 Pick. 90. leads to the same result.

I am aware, that there are cases, in which a doctrine. apparently different. has been maintained. See Marlborough Manuf'g Co. v. Smith. 2 Conn. 579; Northrop v. Newtown & Bridgport Turnpike Co.. 3 Conn. 544; Northrop v. Curtis. 5 Conn. 246: Oxford Turnpike Co. v. Bunnel. 6 Conn. 552. Those cases are susceptible of this explanation. that the terms of the acts of incorporation were construed to mean. that the registration of the transfers was the origination of the new title. and not merely a legal completion of a previous inchoate title. Several of those cases turned upon the right of attachment of creditors according to the local laws, which operated upon the legal title; and the only other case (Marlborough Manuf'g Co. v. Smith, 2 Conn. 579) involved the sole question. whether an equitable assignee was liable for instalments as a legal stockholder; and it was held that he was not. It might be sufficient to say. that the case at bar involves no point as to the priority of any attaching creditor, nor any question as to the legal ownership of the stock. The whole argument turns upon an equitable interest. and a lien consequent thereon. If these cases are not to be explained in this manner. but turn upon the more general principle already stated. with all possible deference to the learned judges, who decided them, they do not appear to me founded on as solid grounds as those which maintain a different doctrine. In a conflict of authority. my judgment goes with the latter. The case of administrators is not distinguishable from that of assignees in bankruptcy. In each case the assets are bound by the same equities. which would affect the vendors; and the administrators and assignees cannot place themselves in a better situation than the principal; but are bound by the same equities. which bind him. See Mitford v. Mitford, 9 Ves. 86. 100; Jewson v. Moulson. 2 Atk. 417, 420; Row v. Dawson, 1 Ves. Sr. 331; Tyrrell v. Hope. 2 Atk. 558; Ex parte Byas. 1 Atk. 124. It is true. that where the equities of all the creditors are equal. a purchaser cannot entitle himself to a priority of satisfaction; but that cannot be. where one has already acquired a lien or equitable title.

Upon the whole. my judgment is, that there has been no misappropriation of the assets by the administrator; but that the equitable interest in the stock was vested in Sheafe; and he had a right to have it sold to discharge the debt due to him. Judgment is, therefore. to be rendered against the defendant. pursuant to the agreement of the parties. only for future assets. quando acciderint.

UNITED STATES (CUTTS v.). See Case No. 3,522.