# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF ESSEX, NOVEMBER TERM 1855, AT SALEM.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,      } Justices.
Hon. BENJAMIN F. THOMAS.

ABIJAH FISHER & another *vs.* PRESIDENT, DIRECTORS AND COMPANY OF THE ESSEX BANK.

Shares in a bank, whose charter provides that they shall "be transferable only at its banking house and on its books," cannot be effectually transferred as against a creditor of the vendor, who attaches them without notice of any transfer, by a delivery of the certificates thereof, together with an assignment and blank power of attorney from the vendor to the vendee, even if notice of such transfer be given to the bank before the attachment.

ACTION OF TORT to recover damages for the defendants' refusal to transfer to the plaintiffs forty shares of the capital stock of the defendants, (who were incorporated and established at

Haverhill in this county, by *St.* 1851, *c.* 269,) alleged to have been purchased by the plaintiffs of Luther G. Bingham.

At the trial before *Metcalf*, J. the plaintiffs introduced evidence of the following facts : On the 26th of February 1852, in New York, Bingham, in whose name as holder the shares then stood on the books of the bank, sold the shares for a valuable consideration to the plaintiffs, and delivered to them the certificate thereof, signed by the president and cashier of the bank, and certifying that Bingham "was entitled to forty shares in the capital stock of the Essex Bank, transferable only in the books of said corporation, at said bank, by the said L. G. Bingham or his attorney." At the same time, Bingham signed, sealed and delivered to the plaintiffs the following instrument : " Know all men by these presents, that I, L. G. Bingham, for value received, have bargained, sold, assigned and transferred, and by these presents do bargain, sell, assign and transfer unto A. Fisher and Thomas Denny forty shares of the stock of the Essex Bank, standing in my name on the books of the said bank, and do hereby constitute and appoint        my true and lawful attorney irrevocable, for me and in my name and stead, but to   use, to sell, assign, transfer and set over all or any part of the said stock, and for that purpose to make and execute all necessary acts of assignment and transfer, and one or more persons to substitute, with like full power, hereby ratifying and confirming all that my said attorney or        substitute or substitutes shall lawfully do by virtue hereof. In witness whereof I have hereunto set my hand and seal the twenty-sixth day of February one thousand eight hundred and fifty two."

On the 13th of April 1852, the plaintiffs addressed a letter to the president of the bank at Haverhill, informing him that they had forty shares of Essex Bank stock, with power of attorney annexed, which shares had been issued to Bingham, and which they were authorized to sell ; desiring the president's assistance in getting a purchaser ; and saying that Bingham was absent for a few days on account of sickness in his family, but would probably be home by the time they could receive a reply, on receiving which they would forward the stock, if the price should

answer. The president testified that he received such a letter, but did not at the time consider it a proper notice or demand to transfer the stock.

On the 10th of May 1852, an attorney of the plaintiffs demanded of the defendants, at the bank, a transfer to them of said shares, and exhibited to the cashier the certificate and power of attorney; and the cashier informed said attorney that said shares had been attached at the suit of Nathaniel C. McLean of Cincinnati, as the property of Bingham. Said attorney afterwards, at the time of the sale of said shares on the execution of McLean, gave the defendants notice of the sale to the plaintiffs.

The plaintiffs here rested their case, and the defendants moved for a nonsuit; but the judge ordered them to proceed with their defence.

The defendants then put in their act of incorporation, the third section of which is in these words: " The stock of said bank shall be transferable only at its banking house, and on its books." *St.* 1851, *c.* 269, § 3.

They also put in an attested copy of the writ and proceedings in the suit of McLean against Bingham, showing an attachment of said shares on the 7th of May 1852, on a writ returnable to the June term of the court of common pleas in this county, and a sale thereof on execution on the 14th of July 1852.

They also introduced evidence tending to show that the shares stood in the name of Bingham on said 7th of May; and that they received no notice of the sale or transfer thereof to any party till the 10th of May; and that the letter introduced by the plaintiffs was never seen by the cashier, nor noted on the books or papers of the bank, and was not on the files of the bank.

Evidence was introduced by both parties upon the point whether McLean had any notice of the sale to the plaintiffs when his attachment was made; which is not material to be stated.

It was then agreed "that the plaintiffs should take a *pro forma* verdict, and the case be reported to the whole court; the com-

petency of all evidence on either side may be objected to, and the court may draw any inferences from legal evidence, which a jury would be authorized to draw; judgment to be entered on the verdict, or the plaintiffs to be nonsuited."

*H. E. Davies* (of New York) *& O. P. Lord*, for the plaintiffs. The case finds that the plaintiffs were the equitable owners of the stock formerly Bingham's, before McLean's attachment. They were also the legal owners; for Bingham had transferred his stock to them, and they had given the defendants notice of the transfer. *Sargent* v. *Essex Marine Railway*, 9 Pick. 202, and cases cited. *Stebbins* v. *Phenix Fire Ins. Co.* 3 Paige, 350. *Union Bank* v. *Laird*, 2 Wheat. 390. *Bank of Utica* v. *Smalley*, 2 Cow. 770. *Gilbert* v. *Manchester Iron Manuf. Co.* 11 Wend. 627. *Fatman* v. *Lobach*, 1 Duer, 361. *Dix* v. *Cobb*, 4 Mass. 512. *Nesmith* v. *Washington Bank*, 6 Pick. 324. *Wakefield* v. *Martin*, 3 Mass. 558. *Alvord* v. *Smith*, 5 Pick. 232. *Chambersburg Ins. Co.* v. *Smith*, 11 Penn. State R. 120.

Under such circumstances, the defendants are liable to the owner for either refusing to transfer the stock to him, or for permitting it to be transferred to one who is not entitled to it, to the amount of the damages sustained by the owner. *Sargent* v. *Essex Marine Railway*, 9 Pick. 202. *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90. *Quiner* v. *Marblehead Social Ins. Co.* 10 Mass. 476. *Gray* v. *Portland Bank*, 3 Mass. 364. *Kortright* v. *Buffalo Commercial Bank*, 20 Wend. 91, and 22 Wend. 348, and cases cited.

The provision in the charter, that the stock is transferable only on the books of the bank, is of no greater or other force than a by-law of the corporation to the same effect, and is merely a regulation for the convenience and protection of the corporation, but does not make such mode of transfer essential to pass the property to a *bona fide* purchaser. *Brick Presbyterian Church* v. *New York*, 5 Cow. 538. *Stuyvesant Church* v. *New York*, 7 Cow. 588. *Dartmouth College* v. *Woodward*, 4 Wheat. 518.

The refusal of the bank to issue certificates to the plaintiffs, upon a demand accompanied by notice of the transfers from

Bingham, before the sale on execution, of itself entitles the plaintiffs to maintain this action. *Fulton Bank* v. *Benedict*, 1 Hall, 480. *Vernon* v. *Manhattan Co.* 17 Wend. 524, and 22 Wend. 183.

*E. F. Hodges & L. Saltonstall*, for the defendants.

SHAW, C. J. On the case presented by this report, it is argued, in behalf of the plaintiffs, that by the acts done by Bingham, the former owner, and the plaintiffs, all his legal interest and attachable property in those shares was devested, and had become vested in the plaintiffs before the 7th of May, when the attachment of McLean was made, and therefore that attachment was unavailing to affect them.

We do not consider the plaintiffs' letter of the 13th of April as bearing upon the question. It does not purport to give notice to the bank that the plaintiffs have purchased the shares; but rather the contrary, that they have the shares with power of transfer annexed. By apologizing for Bingham's temporary absence, they rather seem to intimate that his nominal ownership on the books still continued, to some extent and for some purpose. But, for reasons hereinafter stated, had this been a more formal notice of the transfer of the shares to the writers, and this given to a proper officer of the bank, it would have been unavailing.

Shares in incorporated companies, such as banks, insurance companies, bridges, turnpikes and railroads, have long been considered in this commonwealth as property of a definite and important character, with many of the qualities of visible, tangible, personal property, and having a value, and as capable of appreciation as vessels, or merchandise, or other personal chattels. But it is not visible or tangible, and therefore not like merchandise, capable of passing by manual delivery.

A nearer analogy perhaps is that of a chose in action, capable, like this, of being assigned in equity, by a delivery over of the certificate, which is the assignor's muniment of title, with an assignment duly executed, transferring to the assignee all the assignor's right, title and interest. And yet it is not like the assignment of a chose in action, which is the transfer of the

32 *

assignor's interest in a debt, and vests in the assignee an equi-table right to collect the debt in the name of the assignor.

The right is, strictly speaking, a right to participate, in a certain proportion, in the immunities and benefits of the corporation; to vote in the choice of their officers, and the management of their concerns; to share in the dividends of profits, and to receive an aliquot part of the proceeds of the capital, on winding up and terminating the active existence and operations of the corporation. Again; when a transfer is rightfully made and completed, it vests a right in the transferee, not merely to act in the place of the vendor and in his name, but substitutes him, in all respects, as the legal and only holder of the shares transferred, to the same extent to which they were before held by the vendor. The title therefore, by which such interest is held, is strictly a legal title; it is created and defined by law; its benefits are secured by law; it is transferable by operation of law, and may be attached on mesne process and seized on execution, and sold by legal authority to satisfy the debts of the owner.

Before any method was established by positive law, how, by what mode, or by what precise and definite act, such property should be considered as ceasing to be the property of the seller and becoming the property of the purchaser, courts of justice might well resort to the common law modes of transferring similar incorporeal interests, and hold that a delivery of the only muniment of title held by the owner, with the execution and delivery of an assignment of his interest, by indorsement on the certificate or otherwise, should by analogy be held to be a valid transfer, and, when notified to the bank, should be considered as having taken effect at the date of such delivery.

But whatever common law rules courts may have felt bound to adopt, in the absence of any express rule of law, in determining what act constitutes the actual transfer of shares, the point of time at which the one alienates and the other acquires a legal title to such shares, we can perceive no room to doubt that, where it is so regulated, such law must govern. In the present case, there is such an express provision in the act of

incorporation itself.   The bank is of recent origin, the act was
passed in 1851.   *St.* 1851, *c.* 269.   Like most other modern acts
of incorporation, the act, after creating the corporation, giving
it a name, fixing its location and limiting its capital stock, de-
fines its powers and duties by reference to other acts on the
subject.   But § 3 is a special provision to this effect: "The
stock of said bank shall be transferable only at its banking
house, and on its books."   By the law of this commonwealth,
acts of incorporation are deemed public acts.   Rev. Sts. *c.* 2,
§ 3.   Like other public acts of legislation, their provisions con-
stitute laws, by which all courts and magistrates, all citizens and
subjects are bound.

But it was strongly urged, in the learned argument for the
plaintiffs in this case, that this provision in the charter can
have no greater force and effect than a by-law of the corpora-
tion in the same terms, and does not make a transfer on the
books of the bank necessary to pass the title.   There is some-
thing in one New York case, which countenances this sugges-
tion ; but perhaps it originated in the peculiar provisions of the
New York statutes.   If the corporation are fully authorized to
make by-laws, regulating the transfer, there would seem to be
some ground for holding that they would be binding upon those
holding or seeking to hold shares in the same corporation.   If
a by-law would have the same effect, then it is unnecessary to
make the distinction between a by-law binding upon corporators,
and all those claiming to stand in the relation of corporators,
and a general law of the Commonwealth binding on all its sub-
jects.   But if there be such a distinction, then here is a law of
the Commonwealth binding upon all.

But the argument goes further, and insists that the transfer at
the bank is not essential to transfer the property to a *bona fide*
purchaser, but is merely a regulation for the convenience and
protection of the bank.

We can see no ground upon which thus to restrict the plain
provision of the statute.   If we may judge of the intended
operation of an act of legislation from the useful and beneficial
purposes it may tend to promote, we should construe it as hav-

ing a much broader and more comprehensive scope. We are to take it in connection with all other existing laws.

As a great amount of property is held in Massachusetts in the shares of corporations, it is of importance that the title be easily and certainly ascertained, that the mode of acquiring and alienating it be fixed and known, and that it may at any time be made available, by process of law, for the debts of the owner.

In no way can these objects be so well effected as by a transfer at the bank. The law might have provided that the bearer of the certificate should be deemed the holder, so that it might pass from hand to hand by mere manual delivery. But this would be attended with almost inextricable difficulty. It would be impossible for officers and co-proprietors to know who their associates were, and at every meeting nothing could be done till those present should produce their certificates, and thus show who were entitled to vote; and even then, certificates might change owners during the meeting. The shares could never be attached; for the officer could have no means to obtain possession of the certificate from a reluctant debtor adversely interested; and, without it, the shares might pass the next day to a purchaser without notice.

2. The certificate, in the form now given, may show who is the legal owner at the date of its issue; but this outstanding certificate may have been loaned, pledged, assigned in equity, which it is now contended would, as between the parties, be a good and valid transfer. It cannot therefore be known, by the books of the bank, who is proprietor at any one time.

3. It is obviously an object of great importance, that this large amount of property should be attachable and liable to be sold on execution. This has long been the policy of the State by earlier statutes, ultimately embraced in the Rev. Sts. *c.* 90, § 36; *c.* 97, §§ 36 *& seq.* The certificate being in the hands of the debtor, or some other person on his account, and his interest being adverse to that of the attaching creditor, the officer could seldom, if ever, take possession of it as of a chattel. It is therefore provided that the attachment may be effected

Fisher & another *v.* Essex Bank.

by leaving written notice at the bank; and, on a sale on execution, it is made the duty of the bank and its officers, on notice and request, to give the purchaser a new certificate. This of necessity supersedes the outstanding certificate to the former holder.

All these objects are most effectually accomplished by making the transfer at the bank, the decisive act of passing the property, the legal, transferable, attachable interest. I do not stop to ask precisely what particular act would constitute such a transfer; whether it must be actually entered on the books, or whether the delivery of the certificate by the holder ready to transfer, or with a written transfer executed, so that nothing remains but the mere executive act of the clerk, is sufficient. In either case, it would show who is at any time the actual owner by the books, and inform a creditor, or other person having occasion to know and right to inquire. It is necessary to fix some act, and some point of time, at which the property changes and vests in the vendee; and it will tend to the security of all parties concerned to make that turning point consist in an act which, whilst it may be easily proved, does at the same time give notoriety to the transfer. It would seem to us to be going beyond the rules of just exposition, to hold that a plain provision of statute law, calculated to promote the security of important legal rights of parties in important particulars, should be construed to be a regulation made for the convenience and protection of banks. The clause itself is too clear to admit of doubt: " Shall be *transferable* only," that is, capable of being transferred; the largest and broadest term to express alienation on one part, and acquisition on the other; and the word " only " carries an implication as strong as negative words could make it, that is, in no other mode. It was not to prescribe one mode, leaving others unaffected; it made that mode exclusive.

Nor is this position without high authority to support it. In *Union Bank* v. *Laird*, 2 Wheat. 390, it was held by the supreme court of the United States that, where shares were, by the act of incorporation, made transferable on the books, no person could acquire a legal title in any other mode.

The early Massachusetts cases cited for the plaintiffs, such as *Dix* v. *Cobb*, 4 Mass. 508, were mere equitable assignments of choses in action, and held valid as equitable assignments.

*Quiner* v. *Marblehead Social Ins. Co.* 10 Mass. 476, was the case of a new corporation, the full amount not paid in, no certificates to proprietors issued, but certain instalments had been paid in by subscribers, for which receipts had been given. The act of incorporation provided that no transfer should be valid till the stock was all paid in. It was held that an assignment of these certificates, with power to complete the payment in the name of the assignor, was a good assignment in equity. Besides there does not appear to have been any clause in the charter or by-law directing how shares should be transferred when the company should be organized and in operation.

In the case of *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90, the old certificate, together with an executed assignment of the shares, was tendered to the secretary of the company at their office in business hours, with a power of attorney to transfer on the books, and a new certificate was demanded. This was a full compliance with the by-law on the part of the purchasers; it was the duty of the company then to enter the assignment, and they could not set up their own wrongful act in refusing to enter the transfer, and an attempt to attach the shares themselves, in their own defence. The reasoning of the court may have gone further in stating the grounds, but these were amply sufficient to warrant the adjudication.

The case of *Sargent* v. *Essex Marine Railway*, 9 Pick. 202, is much nearer the present case, and, so far as the requirement that the transfer be made at the bank rests on a mere by-law is in point. The by-law required that all transfers be made in a book, in a specific form, and transferable only on the books. The court consider this by-law, requiring a transfer in a particular form on the books of the bank, as an arrangement of the corporation for their own convenience. But they add: "Neither the act of incorporation, nor any other statute, requires that an assignment shall be recorded in order to give it validity." 9 Pick. 205. This seems to carry a clear implication that if any pro-

Fisher & another *v.* Essex Bank.

vision of law, binding on all persons as such, had required it to be recorded, it must be entered in the books, or delivered to the proper officer for record, to give it validity.

We are aware that several of the New York cases cited in the argument are decisions contrary to the rule we now adopt. But it is to be remarked that, in the case of *Commercial Bank of Buffalo* v. *Kortright*, 22 Wend. 348, before the court of errors, the chancellor and a respectable minority of the members of the court dissented on this point, and were of opinion that, when the charter contains a provision that no transfer shall be valid unless registered in the books, an unregistered transfer does not convey a legal title, but an equitable interest only, subject to all prior equities.

And we think the authority of the case in New York is more than counterbalanced by the decisions of several of the neighboring states.

In Vermont, the court say : " We entertain no reasonable doubt that the mode of transfer of stock pointed out in the charter is the only mode which the public are bound to regard as conveying the title. All persons, unaffected with notice to the contrary, are at liberty to act upon the faith of the title being where it appears upon the books of the corporation to be." *Sabin* v. *Bank of Woodstock*, 21 Verm. 362.

In Connecticut, there are several cases precisely in point. The question of actual transfer is considered to be a question of legal title; and in all transfers under such charter and by-law, the change of title is held to take place when the instrument of transfer is received for record by the clerk, and the transfer bears date from that time. *Oxford Turnpike* v. *Bunnel*, 6 Conn. 558.

In the present case, it is insisted that the plaintiffs presented the certificate, with a transfer from Bingham, and demanded a transfer before the sale on execution. This is true; but the attachment on mesne process was made before any such notice given and demand made by the plaintiffs; and the title of the attaching creditor relates back to the time of attachment. We are of opinion therefore that the attachment and subsequent sale gave that purchaser the better legal title. *Plaintiffs nonsuit.*