NORTHROP *against* THE NEWTOWN AND BRIDGEFORT TURN-
PIKE COMPANY.

*June 27.*    Where the act incorporating a manufacturing company, provided, that the shares of stock should be transferrable only on the books of the company, in such manner as the company should, by their by-laws, direct; and a by-law of the company provided, that the board of directors should prescribe the form of the transfer, to be registered, by the clerk, in the books of the company, and that no transfer should be valid, unless so made and register-ed; it was held, that a deed of assignment, in the form prescribed, was of no avail to convey a title, until actually registered in the books.

The registry operates, not merely to perfect a conveyance previously begun, or to give notice of a conveyance previously perfected, but is, itself, the originating act in the change of title.

An entry of the clerk on a deed of assignment, " *Received for record,*" is not equivalent to a registry.

THIS was an action of *assumpsit*, to recover the amount of four dividends, declared, in the year 1816, by *The Newtown and Bridgeport Turnpike Company*, on one hundred shares of their stock, of which the plaintiff averred, that he was the pro-prietor.

The cause was tried, on the issue of *non-assumpsit*, at *Fair-field, December* term, 1818, before *Edmond, Smith,* and *Gould,* Js.

The title of the plaintiff to this stock was derived from a conveyance or transfer, by *Beebe Hine,* in the following words: " Know all men, by these presents, that I, *Beebe Hine,* of *New-Milford,* in the county of *Litchfield,* for the consideration of 2000 dollars, received to my full satisfaction of *David Nor-throp,* of *Sherman,* in the county of *Fairfield,* do, by these pre-sents, grant, sell, assign, and transfer unto the said *David Nor-throp,* one hundred shares in the stock of *The Bridgeport and Newtown Turnpike Company*; to have and to hold the afore-

said shares in the stock of said company, to him the said *David Northrop*, his heirs and assigns, together with all the rights, privileges and immunities in any wise pertaining or belonging thereto; and the clerk of said company is hereby requested to transfer said one hundred shares from my name, to the name of said *David Northrop*, on the books of said company. Witness my hand, in *New-Milford*, this 27th day of *December*, 1814. [Signed.] *Beebe Hine*." The defendants claimed, that all these shares of stock, were attached, by several creditors of *Hine*, so that the plaintiff gained no title by the transfer; and for the purpose of establishing this defence, the defendants adduced in evidence, the charter of the company, the only material part of which, as applicable to this case, was the following: " The shares in said company shall be transferrable only on the books of said company, and in such manner, as said company shall, by their by-laws, direct." The defendants, also, read in evidence, a by-law of the company, made in conformity to their charter, which was then in full force, in these words: " The board of directors, shall prescribe the form of transfer, to be registered by the clerk, on the books of said company; and the shares, being 500, shall be assignable and transferrable; but no assignment or transfer shall be valid, unless made in the form prescribed by the directors, and registered as aforesaid, by the clerk." The defendants further read in evidence, the following form of a transfer, made by the board of directors, in pursuance of such by-law: " I, *D. B.* of *N.* in the county of *F.*, do, by these presents, assign, and make over to *G. H.* of *W.*,      full original shares in the capital stock of *The Bridgeport and Newtown Turnpike Company*, with all the privileges, and subject to all the burdens, thereunto appertaining; value received of him, the said *G. H.* Witness my hand, at *N.*, this    day of    , 1803."

The transfer in question, was drawn at *New-Milford*, on the the 27th of *December*, 1814. It was agreed between *Hine* and five of his creditors, viz. *William H. Taylor*, *William Taylor*, *Clark Blakeley*, *U. Everitt*, and *Noadiah Mygatt*, who had severally prayed out attachments, on the same day, against *Hine*, and had procured *Charles S. Masters* to be deputed to serve them; that *Masters* should be the bearer of the transfer to the clerk of the company, at *Newtown*, as the agent of *Hine*, and not as the agent of the plaintiff, who was not present, and

*Fairfield,*
*June,*
1821.

*Northrop*
*v.*
The Newtown
and Bridge-
port Turnpike
Company.

*Fairfield,*
*June,*
*1821.*

*Northrop*
*v.*
The Newtown
and Bridge-
port Turnpike
Company.

was ignorant of the transaction ; and that *Masters* should first attach all *Hine's* stock, by virtue of these attachments, and then hand over the transfer to the clerk, for the plaintiff's use. *Masters,* accordingly, attached the stock, on the same day, before he delivered the transfer to the clerk ; the suits on which these attachments were issued, went into judgment; executions were taken out ; and the stock was sold.   The clerk received the transfer, and made thereon this entry : "Received for record, *December* 27th, 1814."   Copies of the attachments were not left with *Hine,* until the 28th of *December.*

*Sylvanus Noble* attached and sold 102 shares of the stock of *Hine.*   The copy of his attachment was left with the clerk, on the 27th of *December* ; but there was a question of fact, whether *Noble's* attachment was levied five minutes before, or five minutes after, the entry was made on the transfer, by the clerk.

On the 28th of *December,* the clerk copied the transfer into the books of the company ; which was the only transfer, that was ever made, by *Hine,* to the plaintiff, on the books of the company.

After the clerk had received the transfer, and made his entry on the back of it, but before it was copied into the books of the company, *viz.* at two o'clock in the morning of the 28th *December, James Nichols* caused the whole of the stock to be attached, by virtue of a writ of attachment against *Hine,* and having obtained judgment and execution, had 26 shares of the stock sold.

All the claims of the attaching creditors were admitted to be *bona fide,* except *Mygatt's,* which was controverted.   All the transfers, since the act of incorporation, have been made in the form prescribed by the board of directors; which was adopted soon after the company was formed.

On these facts, the defendants claimed, that as all the attachments were actually levied on the stock, before the transfer was copied into the books of the company, they ought to hold, in preference to the transfer ; and, also, that the stock had never been transferred on the books of the company to the plaintiff; and, at any rate, that all the attachments, which were levied on the stock, before the entry of the clerk, should hold, in preference to the transfer: and to this effect, they prayed the court to instruct the jury.

The charge given, was, in substance, as follows. " The transfer to the plaintiff, became the act and deed of *Hine*, when it was delivered to the use of the plaintiff. If, then, it was so delivered at *New-Milford*, and if due diligence was used in procuring it to be lodged with the clerk of the company, the plaintiff is entitled to hold, against all the attaching creditors, unless he has lost his priority, by the agreement made with *Charles S. Masters*, as to the order of entries ; that is, unless it was agreed by *Hine*, that the four first named attaching creditors, should be, absolutely, first satisfied. But if you find from the evidence, that it was not the intent of *Hine* to deliver the transfer to the plaintiff, at the time it was put into the hands of *Masters*, but only to employ *Masters* to carry it to the clerk of the company, and there deliver it, for the use of the plaintiff ; or if you shall find, that there was negligence in getting the transfer recorded ; you will give effect to the levies of all the *bona fide* creditors, who had lodged copies of their attachments prior to the delivery of the transfer for record. But if you shall find, that the agreement was only, that the four first-named creditors should have the same priority, that a prior service of their attachments would give in law, the agreement can have no effect against the plaintiff.

" If you find, that any of those persons, who have levied on the shares in question, were not *bona fide* creditors, these claims must be excluded. A sale of the shares, or any of them, upon a judgment fraudulently obtained, does not pass the title.

" As to *Mygatt's* claim ; if he recovered, with the consent of *Hine*, more than was due to him, for the purpose of satisfying claims due to third persons, his recovery will be of no avail against the plaintiff.

" With respect to the claim of *Noble ;* it cannot be let in, although it should appear, that a copy of his attachment was left with the clerk before the transfer was entered ; unless the transfer was fraudulent ; or unless there was negligence, on the part of the plaintiff, in recording his transfer ; or unless the delivery of the transfer to the plaintiff's use, was, in fact, made to the clerk of the company in *Newtown*. But if service of *Noble's* attachment, was, in fact, made on the clerk, before the transfer, and the delivery of the transfer, was, in fact, made, for the plaintiff's use, to the clerk, at his office in *Newtown*, *Noble* would gain a priority. So, if there was negligence

*Fairfield,*
June,
1821.

*Northrop
v.*
The Newtown
and Bridge-
port Turnpike
Company.

*Fairfield,*
*June,*
*1821.*

Northrop
*v.*
The Newtown
and Bridge-
port Turnpike
Company.

in the plaintiff, in entering his transfer, and *Noble* entered first, he would gain a priority.

" With respect to the claim of *James Nichols ;* if the transfer is found not to be fraudulent, and you find a copy of his attachment was left, posterior to the plaintiff's transfer being entered, his claim is not to be allowed. But if you find, that the transfer was fraudulent, his claim, if you find that he was a *bona fide* creditor of *Hine*, is to come into consideration with the other creditors, whether his attachment was entered prior or subsequent to the entry of the transfer."

The plaintiff obtained a verdict for the amount of the dividends demanded ; and the defendants moved for a new trial, on the ground of a misdirection.

*Daggett* and *N. Smith*, in support of the motion, waiving the discussion of minor points, arising in the case, contended, That there could be no valid transfer of these shares, except on the books of the company. The mode of transferring this stock, as well the stock itself, is the creature of the legislature. The charter requires, that the shares shall be transferrable *only on the books of the company.* The *form* of the transfer, so to be made, is left to the regulations of the company; but the company had no power to prescribe a form *not on the books.* The copying of a bill of sale into the books, is not a transfer on the books. And if it were, the property would remain in the vendor, *until this was actually done.* What was done in *New-Milford*, was strictly *a nullity*, as to a change of title. *The Union Bank of Georgetown* v. *Laird*, 2 *Wheat. Rep.* 390. *The Marlborough Manufacturing Company* v. *Smith*, 2 *Conn. Rep.* 579.

There is no room for the application of the doctrine of *relation ;* as nothing was done, which a subsequent act could relate to. The act, to which relation is had, in any case, must be an act required by law.

The *usage* of the defendants, will not aid the plaintiff's title. Though a corporation, authorized by its charter, to contract in a particular mode, may, by a course of practice, render itself *liable* on contracts made in a different mode, as this court decided, in *Bulkley* & al. v. *The Derby Fishing Company*, 2 *Conn. Rep.* 223. ; yet a corporation cannot be *discharged* from an obligation to others, or permitted to *defeat the rights* of others, on the ground, that it has violated, or departed

from its charter.    The title of the attaching creditors, is *stricti juris ;* and it is not to be prejudiced, · by any practice of the defendants ; clearly not, by a course of *illegal acts.*

*Sherman* and *Bissell*, contra, contended, That a transfer registered on the books of the company, is a transfer on the books of the company, within the meaning of the act of incorporation ; and that such transfer, being entered on the books, with due diligence, takes effect from the delivery.    They cited *Wilkinson* v. *Myer*, 1 *Stra.* 585.    *Oades* v. *Woodward*, 7 *Mod.* 93.   S. C. 2 *Ld. Raym.* 786.  849.   S. C. 1 *Salk.* 87. *Parsons* v. *Gill*, 1 *Ld. Raym.* 695. *Fuller* v. *Jocelyn*, 2 *Stra.* 822.    *Robinson* & al. v. *Tonge* & al. 3 *P. Wms.* 398. *Chancey* v. *Needam*, 2 *Stra.* 1081.    *Jennings*, exr. v. *Moore* & al. 2 *Vern.* 609.    *Taylor* v. *Wheeler*, 2 *Vern.* 264.

They also relied upon the invariable usage of the company, from the time of its formation to the time of trial, a period sufficient of itself to create a right, according to which, transfers like the one in question, have been made, and have been considered as effectual to pass the title ; no other mode of alienation having been attempted.

They remarked, that in *The Marlborough Manufacturing Company* v. *Smith*, the transfer was held to be void, because it was not conformable to the by-law ; whereas, in this case, the transfer was made in the form which the by-law prescribed.

Hosmer, Ch. J.    This is an action on the case, brought to recover dividends, made on one hundred shares of stock, in *The Bridgeport and Newtown Turnpike Company*, which the plaintiff claims, *as being his property.*    A verdict was rendered for the plaintiff, in the sum of 293 dollars, 25 cents ; and the defendants moved for a new trial.

The stock was formerly owned by *Beebe Hine*, and the plaintiff claims it, *by purchase.*    On the 27th *December*, 1814, *Hine* made to the plaintiff a written assignment *in pais*, of the shares, for the expressed consideration of 2000 dollars, and therein *requested the clerk of the company, to transfer them from his name, to the name of Northrop.*

Admitting the assignment to have been delivered to the plaintiff, or another person for his use, I will, first, enquire, whether the stock embraced in it, was transferred, *by the delivery.*    If the stock were not the subject of any peculiar

*Fairfield,*
*June,*
1821.

*Northrop*
*v.*
The Newtown
and Bridge-
port Turnpike
Company.

*Fairfield,*
*June,*
*1821.*

*Northrop*
*v.*
*The Newtown*
*and Bridge-*
*port Turnpike*
*Company.*

provisions relative to its transfer, the delivery of the assign-ment, of course, would operate a conveyance of the property. The legislature, however, in the charter of the Turnpike Com-pany, has prescribed the mode in which *alone* the stock *must* be conveyed; and it is not to be disputed, *that it cannot be transferred in any other manner.* They have directed, that " *the shares in said company, shall be transferrable only on the books of said company, and in such manner, as said company shall, by their by-laws, direct.*" On recurrence to the by-laws, it appears, that " the board of directors, were to prescribe *the form* of transfer, to be registered, by the clerk, on the books of the company ; and the shares were made assignable and trans-ferrable ; but no assignment or *transfer* was to be *valid,* unless made in the *form* prescribed by the directors, and *registered* by the clerk." In pursuance of this by-law, the directors of the company, adopted a *form,* by which, the shares were " to be assigned ;" and by this, the stock is to be transferred ex-pressly, *with all the privileges, and subject to all the burdens, thereunto appertaining ;*" and this prescribed form, was the uniform mode of transfer, until the execution of the assign-ment by *Bebee Hine.*

It is evident, that the assignment of stock in *The Bridgeport and Newtown Turnpike Company,* must be made in the mode thus authoritatively declared ; and that the method of convey-ance at common law, is entirely superseded. The distin-guishing features, attending a legal assignment of the stock in *The Newtown and Bridgeport Turnpike Company,* are, that it *must* be in *the form prescribed,* and *registered* on the books of the company ; and any mode essentially variant from this, is not according *to law,* and operates no transfer. The case of the *Marlborough Manufacturing Company* v. *Smith,* 2 *Conn. Rep.* 578. demonstrates the precise exactness, with which the assignment of stock must be made.

A question here arises, *at what time the transfer shall be con-sidered as being complete ;* and in deciding this point, it is ne-cessary to attend to *all* the provisions of the law, on this sub-ject; as the construction cannot be duly made, by concentrat-ing the attention on a particular *part.* The legislature, in the act of incorporation, has explicitly enacted, " that the shares in said company, shall be transferrable *only* on the *books of the company.*" It follows conclusively, that they *cannot* be assigned, merely by *a deed or writing, executed and deliver-*

*ed.* The by-laws of the directors, and the form prescribed, must be construed with reference to *this fundamental provision ;* for if they are not conformable to it, they are wholly void, and without effect. *They* authorise an assignment by a writing ; but expressly declare, that no transfer shall be valid, unless it is *registered on the company books, by the clerk.* Instead of providing, as the directors did, in the case of the *Marlborough Manufacturing Company* v. *Smith,* that the assignment should be made *on the books,* which, according to the court's construction in that case, required, *that there should be a written transfer on the books, signed by the assignor ;* they have taken a different course. *They* require, that there be a writing, duly executed, and *afterwards registered,* on the books of the company ; but, as by law it is necessary, that the transfer should be made *on the books,* it is the fair construction of the by-law, that until the *actual registration* of the assignment, nothing *has effectually been done to convey the property.* This, although varying from the mode practised by other companies, *in effect,* is similar to the *signing a transfer on the books ;* and the *registration of a deed of assignment, to commence its legal operation after it has been recorded,* is virtually the same. For, the scope and object of the legislative provision on this subject, was, to render *the purchase of stock secure to any person,* if, at the *moment* of his purchase, the company books did not furnish evidence, that it had previously been transferred. It must be admitted, either that the construction I have given the by-law of the company is correct ; or that the by-law is illegal, and the stock of the company locked up, without the possibility of transfer.

It is scarcely necessary to add, that an assignment in writing, on which the clerk enters " *received for record,*" is not thereby registered or recorded. Nothing short of copying it, at full length, on the books of the company, either fulfils the words of the by-law, or renders it *a transfer on the books.*

It follows, necessarily, from the principles assumed, and, I trust, established, that the assignment, by *Beebe Hine,* was of no avail, until it was *actually registered on the company books at full length.*

From the motion, it appears, that the superior court founded their determination on this principle ; that the stock was assignable, by a deed or writing delivered, as at common law ; and *that the registering of it by the clerk, if done without negligence, and within a reasonable time,* effectually conveyed it.

*Fairfield,*
June,
1821.

Northrop
*v.*
The Newtown
and Bridge-
port Turnpike
Company.

*Fairfield,*
*June,*
1821.

Northrop
*v.*
The Newtown
and Bridge-
port Turnpike
Company.

They considered the assignment as operating *by virtue of the delivery ;* and that its *subsequent registration* was required, as it is in case of *a grant of land,* to give *notice of an antecedent conveyance ;* whereas the transfer of stock *on the books of a company,* operates not by giving notice of an *antecedent* conveyance, but is a fact essentially necessary *to originate* a title ; before the happening of which registration, no *title has been, or can be, transferred.*

Under the influence of a principle not warranted by law, the charge of the court, by necessary consequence, was materially erroneous. The assignment, if it were duly delivered, and due diligence was used to lodge it with the clerk of the turnpike company, *was considered as operating from its date ;* and the priority of the five attachments served by *Charles S. Masters,* before the assignment was given to the clerk to be registered, was denied, unless *it had been agreed by Hine, that the attaching creditors should first be satisfied.*

In respect to the claim of *Noble,* the jury were informed, that although it should appear, that his attachment was entered for record before the entry was made on the transfer, by the clerk, (which was claimed to be the fact,) it could not be let in, *if the assignment had before been delivered* to the plaintiff, unless there were fraud or neglect.

And in relation to the attachment of *James Nichols,* which was *served on the stock after the assignment had been actually copied in the company books,* the jury were instructed, if the transfer by *Hine* was not fraudulent, and had been received for record, and an entry to this effect had been made on it, by the clerk, that it superseded the attachment.

The charge given to the jury would have been entirely correct, if the principle on which it is founded had been legal ; but the principle was erroneous, and, of consequence, the direction was altogether unwarranted by law.

On these grounds, I advise a new trial.

Whether the assignment was defective, by *reason of variance from the form prescribed,* as no question has been made on this subject at the bar, and the decision of it is not necessary, in this case, I shall omit to express an opinion.

The other Judges were of the same opinion, except CHAP-MAN, J., who gave no opinion, having been of counsel in the cause.

New trial to be granted.