# CUNNINGHAM v. THE ALABAMA LIFE INSURANCE AND TRUST COMPANY.

1. Where the charter of a corporation authorized to lend money, enacts that certificates of stock shall be assignable on the books of the corporation, under such regulations as the Board of Trustees shall establish, it is competent for the trustees to declare by a by-law, that "No stockholder shall be permitted to transfer his stock of the Company while he is in default."

2. An indebtedness by note comes within the prohibition of a general by-law, which declares that stock shall not be transferred so long as the holder is indebted to the Company.

WRIT of Error to the Circuit Court of Mobile.

The facts of this case were agreed by the parties, and are substantially as follows, viz:

C. C. Hazard being the proprietor of fifty shares of the stock of the Alabama Life Insurance and Trust Company, on which forty dollars per share had been paid, on the 28th July, 1841, transferred the same to John B. Toulmin, who received from the Company a certificate of stock reciting the transaction, and stating that the stock was "transferable at the office of the Company, personally or by attorney." It further appears, that the plaintiff had purchased from Toulmin this stock, for a valuable consideration, and without notice of any incumbrance, and upon a production of the certificate applied to the Company, under a power of attorney from Toulmin, to cause a transfer upon its books, and to give him a new certificate in his own name. The Company refused to allow the transfer, because it holds a note made by a firm composed of Messrs. Hazard, Toulmin and one Daniel Fowler, jr. for $5,406 08, upon which there is a balance due the Company of $1,710, and interest. The Company refused to effectuate the contract between Toulmin and the plaintiff, for the reason that a by-law was adopted on the 18th January, 1841, which gave the Company a lien on the stock for the security of the debt due it by Toulmin and others. That by-law is as follows: "No stockholder

shall be permitted to transfer his stock of the Company while he is in default."

It was agreed that should the Court be of opinion that the Company was liable, that judgment may be entered for the plaintiff for the sum of two thousand and eighty dollars and the costs; otherwise for the defendants, which judgment may be discharged on the payment of the dividends accruing on the said stock since the first day of June, 1842, and a delivery to the plaintiff of a certificate of stock on demand.

Judgment was rendered in favor of the defendant and against the plaintiff for costs.

CAMPBELL, for the plaintiff in error.

STEWART, for the defendant. The by-law creates a lien in favor of the Company. Toulmin acquired his stock after this by-law was passed—it was subject to its influence before it was transferred to him; and no action can be sustained for the refusal to recognize the plaintiff's right. [4 Burr. Rep. 2219.]

The seventeenth section of the charter of the Company clearly confers the power to enact such a by-law as that relied on; and this section requires the transfer to be made on its books. All persons contracting in reference to the stock of the Company, are charged with a notice of the terms of the charter; and the plaintiff in the present case by his purchase from Toulmin acquired only an equity subject to all the equities of the Company. [3 Conn. Rep. 544; 6 id. 522.]

But if the power to enact by-laws is not conferred by the charter, it may be claimed as an incidental right; especially where it is not opposed to policy, or the law of the country. [7 Viner's Ab. 125-6-7; 1 Bacon's Ab. 444; Angell & Ames on Corp. 177, 186, 197; 1 Strange's Rep. 645; 2 P. Wm's. Rep. 207; 3 Burr. Rep. 1838; 4 id. 2221; 5 Serg. and R. Rep. 73; 8 id. 73.]

In Pennsylvania, it has been held, that a mere custom independant of a by-law, would give a lien. [8 Serg. and R. Rep. 73.] Public policy, instead of being thwarted by the by-law in question, is really promoted, as it sustains the Company, by affording increased means to pay its liabilities. The acts of the

corporation are obligatory upon its members, whether they were assented to by all or not—if its legislative power enacts a law within the scope of its powers, all are bound by it.

COLLIER, C. J.—The questions in this case are—1. Is the by-law enacted by the defendant, which inhibits a stockholder from transferring his stock, while he is indebted to the company, within the scope of its legislative powers? 2. Does the indebtedness of Toulmin come within the prohibition of that by-law.

1. It is said to be essential to the validity of a by-law, that it should conform to the constitution of the United States and the acts of Congress pursuant thereto, to the constitution and statutes of the State in which it is located, and to the general principles and policy of the common law as it is there acknowledged. [Ang. and Ames on Corp. 182, *et post.* Hence it is held, that it must be reasonable, and while it may regulate trade it must not restrict it, so as injuriously to affect the interest of those who are not corporators. [Id. 193-8.]

The common law annexes to a corporation certain incidental rights, among which are enumerated by-laws, as private stattutes for its government. [Ang. and Ames on Corp. 58; Kyd on Corp. 69.] But it has been said, where the charter expressly declares the power of the Company to make by-laws in certain cases and for certain purposes, its power of legislation is limited to the cases and objects specified; all others being impliedly excluded. [Ang. and Ames on Corp. 177.]

In Sargent et al v. The Franklin Insurance Co. [8 Pick. Rep. 90,] the Court held, that the Company had no implied lien on the shares of the stockholders, as a security for its demands against them; that it was bound to enter on its books a transfer of shares, in pursuance of an assignment; and that it was liable in damages to the assignees of the shares for refusing to do so. [See also Bates v. The New York Insurance Co. 3 Johns. Cases, 238.] But if the charter provides, that all the debts due the Company from a stockholder, shall be paid before any transfer shall be made of stock, this would prevent the assignee from demanding an assignment before the lien of the Company was satisfied. [Union Bank of Georgetown v. Laird, 2 Wheat. Rep. 390.] By the charter of the Hudson's

Bay Company, the corporation were "empowered to make by-laws for the better government of the Company, and for the management and direction of their trade to Hudson's Bay." Accordingly they made a by law, that if a member should be indebted to the Company, his stock in the Company should be in the first place liable to the debts which such member should owe the Company; and that the Company might seize and detain his stock for the debts due to them. It was objected to this by-law, that the stock of the Company should not be liable to the payment of any one debt in preference to another; for all debts ought to be paid according to the course of law, and no by-law could be made to the prejudice of a third person; that it was as if co-partners, on entering into partnership, should covenant that the stock of each partner should be first liable to the debts which he should owe to the other partner, before the debts which he should owe to any other person. But the Lord Chancellor said, "This is a good by-law; for the legal interest of all the stock is in the Company, who are trustees for the several members, and may order that the dividends to be made shall be under particular restrictions or terms; and by the same reason that this by-law is objected to, the common by-laws of companies, to deduct the calls out of the stocks of members refusing to pay their calls, may be said to be void. As to the other part of the by-law empowering the Company to detain and seize the stock of such member, that is also good; but then there ought to be some act done by the Company, to order or declare that the stock of such member is seized for the debt due to the said Company." [Child v. Hudson's Bay Company, 2 P. Wm's Rep. 207; see also, 1 Bac. Ab. 444; Gibson v. Hudson's Bay Company, 1 Strange Rep. 645; Meliorucchi v. Royal Exchange Assurance Co. 1 Eq. Cas. Ab. 9.]

In the case of Waln's Assignees v. The Bank of North America, [8 Serg. & R. Rep. 73,] it appeared that Waln was a stockholder and had been a director of the Bank; that he was legally indebted to the corporation, and made a general assignment, including his stock, for the benefit of his creditors, although he was aware, at the time his indebtedness was incurred, that there was a *usage* of the corporation not to permit a transfer of stock while the holder is indebted to the bank. The

Court considered the right of the assignees to be precisely such as their assignor was entitled to, and say, "The stock passed into the hands of his assignees, subject to all the rights and all the equities of the bank; and this without taking into consideration the evidence of at least the knowledge of one of the plaintiffs of the restriction on transfers, where the stockholder was debtor to the bank. It is reduced to the narrow question, was this regulation of the bank—this usage to retain—this course of dealing between the bank and her customers, unquestionably known as it was to Mr. Waln, binding on him?" *Again*—"The agreement of the stockholders would be equally binding on them, and all who stand in their shoes as a by-law. By-laws bind, because the members of the corporation, either individually, or by those who represent them, are supposed to give their assent to them. A course of dealing—a usage—an understanding—a contract express or implied, is the *lien of the parties and a law to them,* provided they are not repugnant to the charter, or the laws of the land. This is contrary to neither."

The charter of the Union Bank of Georgetown, enacted, "That the shares of the capital stock, at any time owned by any individual stockholder, shall be transferable only on the books of the bank, according to such rules as may, conformably to law, be established in that behalf, by the President and Directors; but all the debts actually due and payable to the bank, (days of grace for payment being passed,) by a stockholder, requesting a transfer, must be satisfied before such transfer shall be made, unless the President and Directors shall direct to the contrary." Upon a certificate issued for fifty shares to one Patton, declaring that the same shall be "transferable at the said bank, by the said Patton, or his attorney, on surrendering this certificate;" the question was, whether as against an assignee, the bank was entitled to a lien upon the stock, for the payment of the debts of the assignor. It was held, that no person can acquire a legal title to any shares, except under a regular transfer, according to the rules of the bank; and if any person takes an equitable assignment, it must be subject to the rights of the bank under the act of incorporation, of which he is bound to take notice. The President and Directors of the Bank expressly deny that they have waived,

or ever intended to waive the right of the bank to the lien for debts due it, by the form of the certificate, and that they ever directed any transfer to be made to Patton which should stipulate to the contrary; consequently the assignee could not coerce the bank to permit a formal transfer, until the debt due it by the assignor was paid. [Union Bank of Georgetown v. Laird, 2 Wheat. Rep. 390; See also Rogers, &c. v. Huntingdon, 2 Serg and R. Rep. 77; Seawall v. Lancaster, 17 id. 285.] So in the case of Northrop v. The Newtown and Bridgeport Turnpike Co. [3 Conn. Rep. 544;] the charter directed that " the shares in said Company, shall be transferable only on the books of said Company, and in such manner as the said Company shall by their by-laws direct." By the by-laws " the Board of Directors were to prescribe *the form* of transfer, to be registered by the Clerk." In virtue of this authority, the Directors adopted a form which declares that the stock is to be transferred expressly, with all the privileges, and subject to all the burdens thereunto appertaining. The question was, at what time the transfer should be considered as complete. *The Court held*, that a deed; of assignment in the form prescribed by the Directors, was of no avail to convey a title, until actually registered on the books of the Company; that registration operates not merely to perfect a conveyance previously begun, or to give notice of a conveyance previously perfected, but is a fact essentially necessary to originate a title; before the happening of which no title has been or can be perfected.

Let us now notice so much of the charter by which the defendant was created a body corporate as is material, and consider the question before us with reference to the principles we have stated. The second section of the act, among other powers conferred, authorizes the Company to make contracts involving the interest or use of money; to receive monies in trust and to accumulate the same at such rate of interest as may be obtained or agreed on, or to allow such interest thereon as may be agreed on. The sixth section provides that no bond or other collateral security shall be required from the said Company, when appointed trustee, guardian or receiver, but all investments of money received by the Company, in either of these characters, shall be at the sole risk of the corporation; and for all losses of such monies, the capital stock, property and effects

of the corporation shall be absolutely liable. And the seventeenth section enacts, that the certificates of stock and of monies received in trust, issued by the corporation, " shall be assignable on the books of the corporation, to be kept at such place or places, and under such regulations as the Board of Trustees shall establish."

The charter does not confer the power to make by-laws for any specific purpose, and consequently that power is not subject to any implied restriction, to a greater extent than are corporations generally. It cannot be pretended that the by-law in question is opposed to any constitutional or statutory provision ; and we cannot conceive that it is unreasonable or in restraint of trade. The seventeenth section expressly authorizes the transfer of stock on the books of the Company ; but invests the trustees with the authority to establish the regulations under which the transfer shall be made. By the term " regulations," we understand nothing more than "rules," for the transaction of the business to which they relate.. These rules must be pertinent to the subject and reasonable in themselves.

The stock of a corporation, or rather its capital, is joint property; the certificate that is issued to the person who has contributed thereto certifying his interest, is not the capital, but is evidence of the number and nominal value of his shares. To some extent the stock is subject to the legislation of the Company, as we have seen was determined in Child v. Hudson's Bay Company. That case, which has been frequently cited with approbation, and always, so far as we have observed, without objection, fully maintains the right of a corporation to declare, by a by-law, that the dividends on stock may be made under particular restrictions or terms; and that the stock of members shall be liable to their debts due the corporation, in preference to other creditors or assignees. That the defendant was fully authorized to become both a debtor and creditor, very sufficiently appears from the sections of the charter we have cited—in fact, the Company could not carry out the purposes of its creation without sustaining both relations. It could not become the receiver of money in trust, and pay interest on it, unless it could be allowed to lend at as high, or a higher rate of interest. But it is needless to say more, as the duties

and powers of the corporation in this respect, are clearly pointed out.

From what we have said it will follow that the by-law in question is in conformity to the charter, and dictated by expediency. It is calculated to enable the stockholders to obtain accommodations from the trustees, upon security less satisfactory than the trustees would advance upon, if the stock of members was not pledged for their individual indebtedness. And so much as it restricts the transfer of the stock, probably to an equal or greater extent does it facilitate the obtaining of money by the stockholders, and thus adds to the capital actively employed; so that the inconveniences which result from such a by-law so far as the public is concerned, is entirely neutralized by the private as well as public benefit which proceeds from it.

The certificate of stock, notwithstanding the terms in which it is expressed, cannot be regarded as a negotiable security, so as to vest in an assignee a legal title to the stock, without any further act. The transfer being, by the terms of the charter, to be made on the books of the Company, the assignee receives but a mere equitable interest until the assignment is consummated; and for a refusal to carry out the contract between the assignor and himself, he cannot maintain an action against the Company until its lien has been discharged. This is very satisfactorily shown by several of the cases cited.

2. In respect to the second question, it may be quite enough to say, that the debt for which the lien is claimed, appears to be due by note to the corporation, and for any thing appearing to the contrary, comes within both the letter and spirit of the by-law.

It will follow from what we have said, that the judgment of the Circuit Court is correct; and it is consequently affirmed.