## THE BANK OF ATTICA *v.* THE MANUFACTURERS' AND TRADERS' BANK.

The general banking act invests the stockholders of banks formed under it with the unconditional right of transferring their stock, except as they may agree to limit it by their articles of association.

A delegation by the articles to the board of directors of the general powers of the association and the management of its stock, does not authorize a by-law subjecting the stock to a lien in favor of the bank for the indebtedness of the stockholder.

A stockholder in a bank having such a by-law, assigned his stock to a purchaser for value, without notice of the by-law, and the bank gave him credit before a transfer of the stock on its books and without notice of its assignment: *Held*, that the purchaser had an equitable title to the stock free from any lien in favor of the bank.

The bank refusing to transfer the stock, the purchaser is entitled to recover its value, and is not restricted to an action to compel an actual transfer.

APPEAL from the Supreme Court. Action by the plaintiff, a corporation organized under the act to authorize the business of banking, against another corporation organized under the same act, to recover the sum of $1,000, and interest from the 1st of September, 1857. The complaint, after setting up the organization of the parties under the act of 18th April, 1838, avers these facts: On the 18th of September, 1856, one Chester Hitchcock became and was the owner of twenty shares of stock of the defendant's bank, and held a certificate of that date for such stock, numbered 175, in his own name. By the terms of the certificate the stock was transferable, on the books of the bank, by the stockholder or his attorney, on surrender of the certificate. Hitchcock being indebted to the plaintiff for divers loans made in the ordinary course of its business, afterwards, and on the 1st day of July, 1857, for a valuable consideration paid to him by the plaintiff, sold, transferred, assigned and delivered to the plaintiff the said certificate of twenty shares. Afterwards, and on or about the 1st of September, 1857, the plaintiff presented the said certificate of stock

to Henry Martin, the defendant's president, and offered to surrender it, and demanded a transfer of the same on the books of the defendant's bank: with which demand the defendant by its president then and there refused, and still refuses to comply. The market value of said stock was, at the time, $1,000, and the plaintiff demanded judgment for that sum.

The answer denied all knowledge or information sufficient to form a belief as to the transfer of the certificate; and averred, secondly, that in and by the articles of association under which the defendant was organized, and which were filed in the office of the Superintendent of the Banking Department, in March, 1856, it is provided as follows: "The rights, powers and privileges now or heretofore conferred by law on this association, and the management of its stock, property and concerns, except the power to increase the capital stock, as hereinbefore provided, are hereby vested in, delegated to and shall be exercised only by, a board of directors to consist of thirteen persons, each of which shall own and hold at least twenty shares in the capital stock of this association.

"The board of directors shall cause suitable books to be kept for the registry and transfer of the shares of the association, and every transfer to *be valid* shall be made on *such books,* and signed by the shareholder or his or her attorney duly authorized in writing, and every transfer shall be made and taken expressly subject to all the conditions and stipulations contained in these articles.

"A majority of the directors shall constitute a quorum for the transaction of business, and may make such by-laws and regulations for the government of themselves, their officers and agents, and for the management of the business of the association, as they may deem expedient and proper, not inconsistent with law or these articles of association, and may make such alterations and amendments to such by-laws, from time to time, as they may deem expedient."

The answer further averred that Hitchcock was one of the original shareholders in said corporation; that he signed and acknowledged the certificate or articles of association, and as

such shareholder the certificate in question was issued to him ; that thereafter and about the 20th of August, 1856, the board of directors made the following by-law :

"No transfer of shares of stock can be made unless the person making the same shall previously discharge all debts and demands due or contracted by him or her to the bank, unless by consent of the board," which was and is in full force.

That of said by-law Hitchcock and the plaintiff had notice before the alleged transfer.

That on the 11th of July, 1857, Hitchcock with his partner Powers, under the firm name of C. Hitchcock & Co., drew their bill of exchange dated that day, on Wells D. Walbridge, payable sixty days after the date thereof, to the order of F. W. Lawson, for the sum of $4,500, which they delivered to Lawson : that it was thereafter accepted by Walbridge and indorsed by Lawson on the 22d of July, 1857, for a valuable consideration to the defendant : that it was presented to Walbridge for payment on the day it fell due, and payment was refused, and notice thereof given to Hitchcock : that it remains wholly due and unpaid, was and is the property of the defendant : that no consent to the sale or transfer of the stock was ever given by the defendant's directors.

On the trial the plaintiff produced and read in evidence the certificate of stock as follows :

"STATE OF NEW YORK.

"No. 175.  Shares twenty.

"MANUFACTURERS' AND TRADERS' BANK, }
Shares $50 each.  }

"Be it known, that Chester Hitchcock is the proprietor of 20 shares in the capital stock of the Manufacturers' and Traders' Bank of the city of Buffalo, which is transferable on the books of the bank by the said stockholder or attorney, on the surrender of this certificate.

"BUFFALO, Sept. 18th, 1856.

"D. F. FRAZELL, Cash.  H. MARTIN, Pres't.

On the back of the certificate was the following indorsement:

"For value received, I hereby assign and transfer to the Bank of Attica, all my right, title and interest in twenty shares of the capital stock of the Manufacturers' and Traders' Bank, standing in my name on the books of said bank and represented by the within certificate.

"BUFFALO, July 1st, 1857.

"CHESTER HITCHCOCK."

The signature was proved, and the plaintiff rested.

The defendant then proved all the allegations in the answer, except the notice to the plaintiff and Hitchcock of the by-law, and no proof was offered that the defendant's directors did not consent to the transfer.

The justice decided, on motion of the plaintiff's counsel, that the facts proved formed no defence, and the jury, under his direction, found a verdict for the plaintiff for $1,080.68; the value of the stock and interest, and judgment was entered accordingly.

On appeal this judgment was reversed at general term in the eighth district, and a new trial granted. The plaintiff appealed to this court, stipulating according to the statute that in case the order for a new trial should be affirmed judgment absolute should be rendered for the defendant.

*Lorenzo K. Haddock*, for the appellant.

*Sherman S. Rogers*, for the respondent.

The opinion of the court was delivered by

DENIO, J. We are of opinion that it was not in the power of the directors of the defendant's bank to restrain the transfer of its stock in the manner proposed by the by-law upon which the defendant relies. The general banking law contemplates an individual ownership of the shares into which the capital stock shall be divided, and their transfer from one

person to another.  It declares that the shares shall be personal property, though the money which constitutes the capital may be in part invested in real estate.  The association, in judgment of law, is seised and possessed of all its real and personal property ; but it is not in any sense the owner of the shares, 'those being vested in the individual proprietors.  The quality of transferability being attached to the shares, the corporate body has no authority to interfere with the disposition which any shareholder may see fit to make, except so far as such authority is conferred by the act itself, or by some general law applicable to the case.  Upon the subject of transfers, the nineteenth section of the statute declares that the shares shall be transferable on the books of the association in such manner as may be agreed upon in the articles of association. (*Laws of* 1838, 249.)  Assuming, without at present deciding, that this provision would allow a restraint to be inserted in the articles of the character of that contained in this by-law, it does not afford any countenance to the position that it could be imposed in any other form.  If we concede that the power to determine the manner in which a transfer on the books may be made includes a power to forbid it in a case in which the shareholder is indebted to the association, the act prescribes very distinctly that it is to be contained in the articles.  The manner of the transfer, including, according to this assumption, any qualifications or restraint which it may be thought expedient to attach to the right to transfer, is to be such as may be agreed upon,—not by a by-law, or by any act of the directors, but in the articles of association.  It was not necessary to insert negative words to exclude any other manner of performing the same thing; for, by the most common rules of construction, where a matter is authorized to be done in a particular way, every other different method of doing it is excluded.  And the difference between a restraint upon alienating the shares in these associations, contained in the articles which must receive the assent of all the primary shareholders, and by which all persons holding derivative interests must be bound, and a like restraint imposed by the agents of the association in the form of

a by-law, which may or may not come to the knowledge of the shareholders, and which, if known, may be disapproved of by them, is very marked. A person may generally agree by express contract to any qualification of his rights of property, not repugnant to the rules of law; but if another person undertakes to attach such qualifications in his behalf, he must show his authority for the act. I am unable to find any authority for the directors in these associations to insert such a provision in a by-law. The Revised Statutes do indeed declare that every corporation, as such, has power to make by laws not inconsistent with any existing law, among other things, for the transfer of its stock. (1 *R.* . *S.*, 600, § 1, *subd.* 6.) If this would be a sufficient warrant for the by-law under consideration—if the general banking law had been silent upon the subject of transfers of stock—it is quite otherwise when we see that a distinct regulation is contained in that act, assigning the articles of association as the instrument in which the rules respecting transfers are to be contained.

I do not think, therefore, it was in the power of the associates to agree in the articles, that the matters which the Legislature had declared might be contained in them, should be the subject of regulation by the directors in forming their by-laws; but if they could so agree, I am of opinion that the delegation of power is not sufficiently comprehensive to meet the case. The articles in this case declare that a majority of the directors may make by-laws and regulations for the government of themselves, their officers and agents, and for the management of the business of the association. The portion of the by-laws relied upon by the defendants, does not relate to these subjects. It does not concern the business of the association, but the private business and individual interests of the shareholders. Ample scope would be given to the delegation of authority, if we hold it to be confined to the affairs which the corporation as such are concerned in transacting for the common interest of all the shareholders.

These considerations lead to the reversal of the judgment of the Supreme Court, and it is accordingly reversed.

JOHNSON, Ch. J., COMSTOCK, S. B. STRONG and GROVER, Js., concurred.

ALLEN, J. (Dissenting.) It is objected in the first place that this action cannot be maintained: that the remedy should have been by action to compel the defendant to transfer the stock on its books, inasmuch as in the event of a recovery it would not become the owner of the stock, and cannot therefore in this way reduce its capital.

Since the decision of the Court of Errors in the case of *The Commercial Bank of Buffalo* v. *Kortwright* (22 *Wend.*, 348), this question has been considered as settled in the courts of this State, and the propriety of this form of action was recognized upon the strength of that authority in the case of *The Mechanics' Bank* v. *The New York and New Haven Railroad Company* (3 *Kern.*, 624).

The great question in this case is, whether the defendants' by-law declaring "that no transfer of shares of stock can be made, unless the person making the same shall previously discharge all debts or demands, due or contracted by him or her to the bank," is valid and binding so as to be applicable to the present plaintiff.

A previous inquiry and preliminary to this, may be made, whether such a provision would be obligatory upon third persons, dealing in good faith, with stockholders of the corporation, even if contained in the articles of association. Some doubts in relation to it, have been expressed in a few of the cases on this subject. But I think, upon a review of the statutes and the authorities under them, that the question in this State may be considered as at rest. At common law, and independent of any statute, it may be conceded that the defendant would have no right to prevent the transfer of stock, on account of the indebtedness of the stockholder. And it may also be conceded that an incorporated company has no rights except such as are specially granted, and those that are necessary to carry into effect the powers so granted. What then is the statute under which the defendant was organized? What are the powers therein granted?

The defendant, as well as the plaintiff, is a corporation, organized under the general banking law. By section 16 of that act (*Laws of* 1838, 49), a certificate is required to be made, stating, 1. The name used to distinguish the association. 2. The place where its operations of discount, &c., shall be carried on. 3. The amount of capital stock, and the number of shares into which it shall be divided. 4. The names and places of residence of the stockholders, and the number of shares held by each; and 5. The period of the commencement and termination of the charter. This certificate must be signed and acknowledged and recorded in the office of the clerk of the county where the office of the company is situated, and a copy filed with the Superintendent of the Bank Department. (*Laws of* 1854, *ch.* 185.) Section 17 makes copies of this document, duly certified, evidence in all courts. Section 19 declares that the shares shall be deemed personal property and shall be transferable in such manner as shall be agreed upon in the articles of association, and every person becoming a transferree shall succeed to all the rights and liabilities of the prior shareholder; and no change shall be made in the articles of association by which the rights of creditors shall be changed. By section 18, the associates are authorized to carry on the business of banking, &c., and exercise such incidental powers as shall be necessary to carry on such business.

The defendant, in forming its articles of association, provided that the rights and privileges conferred by law upon it, and the management of its stock, property and concerns, should be delegated to and exercised by a board of thirteen directors, who should cause suitable books to be kept for the registry and transfer of the shares; and that every transfer, to be valid, should be made on such books, and signed by the shareholder, or his or her attorney duly authorized in writing; and that every transfer should be made and taken expressly subject to all the conditions and stipulations contained in the articles. A further provision was inserted, that a majority of the directors might make such by-laws and regulations, for the government of themselves, their officers and agents, and for the manage

ment of the business of the association as they might deem expedient and proper, not inconsistent with law, and make such alterations and amendments, from time to time, as they might deem necessary.

Hitchcock, the plaintiff's assignor, was one of the original shareholders, and signed and acknowledged the certificate or articles of association. Now I do not understand that the learned justices who decided this case below, differed in their construction of this statute. The distinguished justice (GRO-VER) who tried the cause, and who delivered the dissenting opinion, remarks, that section 19, which declares that the shares shall be transferable on the books of the association, in such manner as shall be agreed upon in its articles, "shows the intention of the Legislature in unmistakable language to confer upon the holders of stock, in these associations, the absolute right of transfer upon the books of the association, subject to no restriction except what shall be expressed in the articles." He expresses a doubt, it is true, as to the power to insert in the articles restrictions upon stockholders in transferring their stock, but observes that it is not necessary to consider this question, inasmuch "as there is no such provision contained in the articles of the defendant." Neither do I understand it to be seriously contended by the plaintiff's counsel that such restriction cannot be legally inserted in the articles— on the contrary it is rather conceded in some of their points submitted on the argument.

But the question is not now an original one to be determined upon principle. A review of the authorities bearing upon it, both in and out of the State, in my judgment, fully dispose of it in favor of the defendant.

In the case of *Quiner* v. *The Marblehead Social Ins. Co.* (10 *Mass.* 476), it was held that where a statute incorporating an insurance company provided that no transfer of any share should be valid until the whole capital should have been paid in, a *bona fide* sale, by a debtor to his creditor, in satisfaction of the debt, was sufficient to transfer the equitable interest, so far as to justify the company in issuing certificates to the assignee,

and to entitle him, when the full amount of the shares should be paid in, to have the transfers entered in the books of the company, and to have a certificate of his shares. It was said by the court that the delivery of the certificate with an indorsement upon it for a valuable consideration was a sufficient transfer of the right.

In the case of the *Union Bank of Georgetown* v. *Laird* (2 *Wheat.*, 390), it appeared that by section 11 of the act of incorporation of that institution, the shares of any individual stockholder were transferable only on the books of the bank, according to the rules (conformably to law) established by the president and directors; and all debts due and payable to the bank by a stockholder, must be satisfied before the transfer could be made, unless the president and directors should direct to the contrary. The court held that no person could acquire a legal title to any shares, except under a regular transfer according to the rules of the bank, and if any person should take an equitable assignment it must be subject to the rights of the bank, under the act of incorporation, of which he is bound to take notice. A certificate for fifty shares was issued to one Patton, one of the original subscribers to the bank, in the usual form, declaring, as in the present case, the shares "to be transferable at the said bank by the said Patton or his attorney on surrendering this certificate." On the 10th of July, 1811, Patton executed a power of attorney, authorizing the defendant to make a transfer of his stock, and on the 22d August following he executed to the defendant, Laird, a deed of assignment of his stock. Laird applied to the officers of the bank for a transfer of the shares upon their books. This was refused on the ground of Patton's previous indebtedness to the bank. The court said that the president and directors had not waived the right of the bank, to the lien for debts due to the bank, by the form of the certificate, and that the shares were therefore responsible for the debts; and a decree for a transfer to Laird was refused.

The courts in Pennsylvania have frequently decided in accordance with the above, and it is unnecessary to do any

thing more here than to cite some of the numerous cases in that State. (*Sewall* v. *Lancaster Bank*, 17 *Serg. & Rawle*, 285; *Grant* v. *Mechanics' Bank of Philadelphia*, 15 *id.*, 140; *Rogers* v. *Huntingdon Bank*, 12 *id.*, 77.) So in Connecticut. (*Northrop* v. *The Newtown and Bridgeport Turnpike Co.*, 3 *Conn.*, 544; *Oxford Turnpike Co.* v. *Bunnel*, 6 *Conn.*, 552.) And in Ohio. (*Downer* v. *Bank of Zanesville*, *Wright* (*Ohio*) *R.*, 477; and see further cases in *Angell & Ames on Corporations*, 3d ed., 352, 353.)

The Supreme Court of the United States in the cases of *Mechanics' Bank* v. *Seton* (1 *Peters*, 299), and *Brent* v. *Bank of Washington* (10 *Peters*, 596), have recognized the views expressed in 2 *Wheaton*, 90, and affirmed that decision.

But it is unnecessary to pursue the authorities further beyond our own jurisdiction.

In our own State the question has been abundantly settled. The case of *The Bank of Utica* v. *Smalley* (2 *Cow.*, 770), was this: the plaintiff, brought its action to recover the amount of a promissory note. Thomas Colling was offered as a witness for the plaintiff, and was objected to as a stockholder. He immediately made a transfer of his stock, but was still objected to on the ground that, by the 6th section of the act incorporating the plaintiff, it was enacted that no transfer of stock should be valid until registered in the books of the bank, and unless the person making the same should previously discharge all debts due by him or her to the corporation, and that no transfer was made on the books. The witness, however, was admitted and the defendant excepted. The court in deciding the question in favor of the plaintiff, remarked, that the provision in the 7th section was intended exclusively for the benefit and protection of the bank. That "*their lien* upon *the stock*, for any debts due to them, could not be affected by a transfer, and the only notice of a transfer which they were bound to regard, was a registry of it in their books." In other words the transfer was good, so far as the holder was concerned, subject to the equities of the bank, and to the payment of any dividends before it was made on the books of the bank.

The case of *Gilbert* v. *The Manchester Iron Manufacturing Co.* (11 *Wend.*, 627), referred to this with approbation, and as settling the question that a transfer passes all the interest of the stockholder to the purchaser, although not made in con- formity to the by-laws. The court remarked that the rules and by-laws of a company which prohibit any transfer except upon the books of the company, have reference either to the right of voting or to the security of the company, by way of lien upon the stock, for any indebtedness of the stockholder, and do not incapacitate such stockholder from parting with his interest. "The purchaser acquires the right which the seller had—*if the stock is under incumbrance it remains so.*"

The case of *Stebbins* v. *The Phœnix Ins. Co.* (3 *Paige*, 350), cited by the plaintiff's counsel, does not conflict with either of these decisions. The Chancellor said in that case that the by- law which declared that no transfer of stock should be valid unless made on the books of the company, did not give the company any claim upon the stock by way of lien, because probably it did not provide for such lien; but he remarked that the legal title could not pass till such transfer took place, and that the purchaser, without a transfer upon the books, took it subject to any prior equity of the company. He observed, it is true, in the course of his opinion, that although the 8th section of the act of incorporation provided for a lien upon the stock, for debts due or contracted by the holder, the com- pany could not be permitted to enforce that lien against a *bona fide* holder, who had no notice of the equitable lien; but this remark was not called for, and is not in harmony with the other decisions in this State on that point.

And finally, this court expressly recognized and affirmed the authority of these cases in the recent case of the *Mechanics' Bank* v. *The N. Y. & N. H. R. R. Co.* (3 *Kern.*, 599, 626), where the learned judge who delivered the opinion of the court remarked, "that the precise propositions decided were, that no legal title to shares could be acquired, *except by a trans- fer* made according to the requirement, and that the equitable title of the transferree was subject to all the rights of the *ror*

*poration* against his assignor." Thus it will be seen that by the repeated adjudications of our own courts, this question is relieved from all doubt. And why should it not be? So far as Hitchcock was concerned, it was with him a matter of contract, between the bank and himself, voluntarily. He entered into and signed the articles of association, which directed as to the manner and mode of transfer of the stock, and expressly provided—what would have been incidental without—that the directors should have the power to make all suitable by-laws. The certificates were only transferable on the books of the bank; this was known not only to him but to the plaintiff, being upon the face of the certificate of stock and the articles were filed in the proper offices, and were notice to all the world of what they contained. The certificate was not negotiable: "certificates of stock," say the court in 3 *Kernan*, 627, "are not securities for money in any sense, *much less* are they negotiable securities." The plaintiff was apprised and well knew that it could obtain no legal transfer of the stock except upon the books of the bank, and that when it resorted there by any of its officers, for the purpose of effecting such transfer, it could be ascertained whether Hitchcock was in a position to transfer the stock, or whether by reason of any indebtedness to the defendant he was not authorized to do so until such indebtedness was discharged.

Assuming, then, that the provision would have been valid if contained in the articles of association; the question returns: Had the directors power to make the by-law, so as to make the restriction equally binding.

It has been truly said, that "though the power to make by-laws, is unquestionably an incident to the very existence of a corporation, it is rarely left to implication but is usually conferred by the express terms of the charter." (*Angell & Ames*, 323, 3*d ed.*) The incidental power results from its necessity to enable the corporation to answer the purposes for which it was created. Where it is conferred by the charter or by the statute, it must be presumed as granted. In the present case, the articles provided that the board of directors should cause suit

able books to be kept "for the registry and transfer of the shares which should be only valid when made in such books." They were also empowered, as already remarked, to make by-laws, for the management of the business, as they might deem expedient and proper, not inconsistent with law, and the articles of association. In addition to all this, it is enacted (1 *R. S.*, 600, § 1, *sub.* 6), that every corporation shall have power to make by-laws, not inconsistent with any existing law, for the management of its property, the regulation of its affairs, and for the transfer of its stock. Section 2 declares that the powers enumerated in the preceding section vest in every corporation, although not specified in its charter or in its act of incorporation. Here it will be perceived the language is quite broad and comprehensive, and would seem to indicate pretty clearly that it was the intention of the Legislature to enable any corporation to enact by-laws, not inconsistent with law, so that they should have the same force and effect as if originally inserted in the charter or act of incorporation, and particularly in relation to the transfer of its stock.

But what is meant by the term, "inconsistent with law or the articles of association?" Let us look a little into this question; and, 1. In reference to its application to Hitchcock, the holder of the stock and the assignor of the plaintiff.

It has been before observed, that Hitchcock was one of the original stockholders, and subscribed and acknowledged the articles of association. It was a matter of contract, therefore, between the corporation and himself, that the stock should be transferred on the books of the bank only. He also assented to the power given to the directors, to enact any by-law that should not be inconsistent with his rights. The by-laws (says *Grant on Corporations*, 79), "are always obligatory on all the members, and each member is bound to take notice of them, for every one within the scope of the by-laws is considered as having given his consent to them." (*See Angell & Ames on Corporations*, 337, 3d *ed.*) It is true that no by-laws can be made inconsistent with the charter nor contrary to law. Is the by-law under consideration within either of these objections? It

appears to me that it cannot with propriety be said to be subject to the first, for it has already been shown that such a provision in the charter would have been valid, and the statute just cited would seem to warrant its enactment in the by-laws. Why would it be good, if contained in the articles? For the same reasons that would render it proper as a by-law, viz., that it is intended in both cases for the protection of the interests of the corporation. No one is interested in the provision except the associates. It is calculated to be for the protection of the company of which each stockholder, until he transfers his stock, is a member. It forms an additional security to each member and adds to the value of his stock. It is a part of the proper management of the stock, as contemplated by the articles. Each member has a separate interest and the whole a community of interest. It is a reasonable and proper by-law, and one not certainly inconsistent with law. No principle of public policy is violated by it. It is said that it is a restriction upon the stockholder in transferring his stock, without his knowledge or consent. But this is not so either in law or in fact. He assents to the making of all by-laws calculated to protect his own interest and that of the corporation, and he is presumed as a member to know of their existence, and that the corporation for its own security chose to create and hold a lien upon the stock of each member who should become indebted to it, until such debt was paid. It is true, the stock is declared by the statute to be personal property, but the certificates are not negotiable, as heretofore proved. A majority of the directors may constitute a quorum, and may make such by-laws for the management of the business as they may deem proper. The directors are appointed to act for the benefit of all, and thus manage for the interest of each. "It is necessary that the company should have the means of preventing a transfer of stock in derogation of its own rights, where it has a lien upon the stock for debts due to it from a stockholder. To secure this knowledge, and to enable corporations to avail themselves of such lien without danger, these clauses are usually inserted in their charters, *or form a part of their by-laws.*" (*Angell & Ames*

*on Corporations,* 351, 315, § 56, 3*d ed.*) A transfer, it is true, not according to such charter or by-laws, would pass to the purchaser all the interest which the seller had, but subject to the existing equities or lien of the corporation. (*Child* v. *Hudson's Bay Co.,* 2 *P. Williams,* 207 ; *Morgan* v. *Bank of North America,* 8 *Serg. & Rawle,* 73; *McDowel* v. *Bank of Wilmington,* 1 *Harrington, Del.,* 27; 4 *Ala.,* 652; *Nesmith* v. *Washington Bank,* 6 *Pick.,* 324; 11 *Wend.* and 2 *Wheat.,* before cited, and 3 *Kern.,* 625, 626.)

2. It remains to be considered whether a third person situated as the plaintiff in this case is, claiming to be a purchaser of the stock for value, without notice, and not being a member of the corporation, is concluded by the by-laws. Most of the cases cited, and particularly those in this State, are with the defendant on this question. In the case before cited (3 *Kern.,* 622), the court say, that it is common to deal in the stock of corporate companies, by transferring without entry on the books. "The dealer in such case acquires an equitable title to the stock, and if the vendor's title is open to no impeachment, he has the right to call upon the corporation to clothe him with the legal title; but whether the transferree acquires any better title than his assignor had, depends on the nature of the obligation itself. The general and familiar rule is, that he does not. If the instrument has negotiable qualities, he may. In such cases the title passes by mere indorsement or delivery. When the instrument is not negotiable, an equitable title is all that can be acquired; and as between equities, the prior one generally prevails." The defendant in the present case, as in the one just cited, expressed in its articles and on the face of the certificate, that the stock could only be transferred on the books of the bank on the surrender of the certificate, and by its by-law declared that no transfer could be made without consent, until all previous indebtedness of the stockholder was discharged; and consequently it follows, that no legal title could be acquired except by an actual transfer on the books, "and that the equitable title of the plaintiff was subject to all the rights of the corporation *against its assignor.*" It was said in the dissenting

opinion of the court below, that there was good reason for requiring the mode of transfer to be expressed in the articles of association, because they were filed in a public office and open to examination, and that it was to be presumed that any one about to purchase stocks, would ascertain from this source the requisites of perfecting his title: that it was not so with a by-law, which could not readily be found except among a long list of rules adopted for transacting the ordinary business of the bank. But to this it may be answered, that the articles and the certificates themselves inform the purchaser that a transfer can only be made on the books of the bank; and the articles further inform him, as well as the statute before cited, that the management of the business in relation to the transfer of the stocks is intrusted to directors who may regulate it by the enactment of by-laws. Restrictions of this kind are usual, and have been common in the history of corporations for a long period of time; sometimes in the charter and at others in the by-laws. All this is certainly sufficient to put a purchaser upon inquiry. By resorting to the counter of the bank and the transfer book, he would at once learn the fact whether the seller was in a condition to transfer, consistent with the articles and by-laws of the association, and he would at once be informed of the restriction which existed. Can a person claim to stand in the light of a *bona fide* purchaser, who, on being thus placed upon his guard, omits the necessary precautions to protect himself? It appears to me that he cannot, and that he only acquires the right which the seller himself possesses, when he makes the sale.

Again, it is insisted that the transfer of stocks can only be regulated by the articles of association, and that no restriction can be imposed upon it by the by-laws; that the stock can only be transferred in the manner prescribed in the articles. Now the manner has reference to all the conditions and stipulations contained in these articles and upon which the stock may be transferred, and they provide that the power to manage the stock shall be vested in the directors, who may make by-laws,

&c. These make a part of the manner of transfer provided in the articles.

It remains to be inquired what equitable interest the plaintiff acquired by his purchase.

At the date of the assignment on the 1st of July, 1857, it does not appear that Hitchcock was indebted to the bank, or that he had contracted any debt not yet due. The plaintiff, however, neglected to give notice of his assignment, nor is there evidence that the defendant had any knowledge of it until the 1st of September following, when the transfer upon the books was demanded. In the meantime, and on the 11th of July, 1857, Hitchcock, as one of the firm of C., H. & Co., drew the bill of exchange described in the answer, and became contingently, and finally fully, liable for its amount, which has never been paid. The defendant, therefore, had no notice of the assignment when the bill of exchange was drawn and discounted, and may have loaned the money on the faith of the shares. (1 *Pick.*, 324.) It had a right to deal with Hitchcock as its stockholder until such notice. The very object of the by-law was to enable it at all times to know its stockholders. Suppose no notice had been given until after a dividend had been declared, and the money had been paid to Hitchcock, could the plaintiff have claimed such dividend on presenting his certificate and assignment afterwards? Most clearly not—and so if any indebtedness incurred by Hitchcock, on the strength of the stock, while standing in his name upon the books, otherwise the protection designed by both articles and by-laws could be of very little value. (2 *Cow.*, 770, and other cases already cited.) It was the plaintiff's own fault that the transfer was not perfected, and it cannot be permitted to take advantage of its own default and neglect, to the prejudice and defeat of the defendant's prior equities.

But, again, the plaintiff in this case cannot be said to be a *bona fide* purchaser as against the defendant, for the reason that it did not part with value when it received the assignment of the certificate of stock. It is averred in the complaint, and nothing in the proof appears to the contrary, that Hitchcock, being

indebted to the plaintiff for divers loans, made to him in the ordinary course of its business, that he, for a valuable consideration, &c., transferred the certificate. Nothing appears to the contrary except the recital of "for value received" in the assignment, which, taken in connection with the complaint, shows that the stock was taken for a precedent debt—and whether in payment or as collateral security does not appear. The plaintiff, therefore, did not part with anything of value at the time; it paid no real consideration, and cannot claim to hold the stock, and deprive the plaintiff of its right, previously secured under its own charter and by-laws.

The judgment should be affirmed.

Judgment reversed.